ANDERSON, ADMR., APPELLEE, *v.* THE CITY OF MASSILLON ET AL.,
APPELLANTS.

[Cite as *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711.]

*Political-subdivision liability—R.C. 2744.03(A)(6)(b)—R.C. 2744.02(B)(1)(b)—*
*Immunity of employees of political subdivisions—Willful, wanton, and*
*reckless misconduct.*

(No. 2011-0743—Submitted February 8, 2012—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Stark County,

No. 2010 CA 00196, 193 Ohio App.3d 297, 2011-Ohio-1328.

_____

SYLLABUS OF THE COURT

1. "Willful," "wanton," and "reckless" describe different and distinct degrees of
   care and are not interchangeable. (*Thompson v. McNeill*, 53 Ohio St.3d
   102, 559 N.E.2d 705 (1990), modified.)

2. Willful misconduct implies an intentional deviation from a clear duty or from a
   definite rule of conduct, a deliberate purpose not to discharge some duty
   necessary to safety, or purposefully doing wrongful acts with knowledge
   or appreciation of the likelihood of resulting injury. (*Tighe v. Diamond*,
   149 Ohio St. 520, 80 N.E.2d 122 (1948), approved and followed.)

3. Wanton misconduct is the failure to exercise any care toward those to whom a
   duty of care is owed in circumstances in which there is great probability
   that harm will result. (*Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367
   (1977), approved and followed.)

4. Reckless conduct is characterized by the conscious disregard of or indifference
   to a known or obvious risk of harm to another that is unreasonable under

the circumstances and is substantially greater than negligent conduct. (2 Restatement of the Law 2d, Torts, Section 500 (1965), adopted.)

5. The violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct, but may be relevant to determining the culpability of a course of conduct.

———————————

**O'DONNELL, J.**

{¶ 1} The city of Massillon and firefighters Susan Toles and Richard Annen appeal from a judgment of the Fifth District Court of Appeals that reversed a trial court decision entering summary judgment in their favor. Cynthia Anderson filed a wrongful-death action against the city and the firefighters arising out of the deaths of Ronald E. Anderson, her husband, and Javarre J. Tate, her grandson, who died when a Massillon fire engine operated by Toles and commanded by Annen collided with her husband's vehicle.

{¶ 2} Relevant to this appeal are two statutes, one relating to a defense available to political subdivisions and the other relating to immunity for employees of political subdivisions. R.C. 2744.02(B)(1)(b) affords political subdivisions a full defense to liability for injuries caused by the operation of a fire-department vehicle responding to an emergency if the operation of the vehicle does not constitute *willful or wanton* misconduct. R.C. 2744.03(A)(6)(b) provides immunity to political-subdivision employees for acts or omissions not committed in a *wanton or reckless* manner.

{¶ 3} The appellate court determined that the willful or wanton misconduct referred to in R.C. 2744.02(B)(1)(b) is the functional equivalent of recklessness. Admittedly, these degrees of care have been confused, but they have different meanings, involve different degrees of culpability, and are not interchangeable. Accordingly, we clarify their meaning, and we affirm the judgment of the court of appeals but remand the case to the common pleas court

for further proceedings to determine, pursuant to our clarification of these terms, whether the city has a full defense to liability and whether the firefighters are entitled to immunity.

**Facts and Procedural History**

{¶ 4} On the morning of May 6, 2008, Tammy Lockey called 9-1-1 to report a car fire at 1272 Huron Road in Massillon, Ohio. The fire dispatcher, Thomas Thornberry, called for Engine 214, a pumper truck, to respond. However, after the caller indicated that the car fire was near a house, Thornberry dispatched Engine 211, an aerial ladder truck.

{¶ 5} Engine 214 left the station before Engine 211, headed south on Erie Street, and turned east on Walnut Road. Engine 211, driven by Toles and commanded by Annen, followed the same route.

{¶ 6} Walnut Road is a narrow, two-lane street in a residential area with a speed limit of 25 m.p.h. Stop signs and a flashing red light control the intersection traffic at Walnut Road and Johnson Street. A tree, a utility pole, a fence, bushes, cars, and a house close to the street partially obstructed the view of traffic approaching the intersection on Walnut Road.

{¶ 7} Firefighter Batavius Greenwood, the driver of Engine 214, slowed down at Johnson Street to ensure that the intersection was clear of traffic before proceeding through it. At that time, according to the driver of a car behind his van, Ronald Anderson, who was taking his grandson to preschool, approached the intersection from the south, stopped at the stop sign, and waited for Engine 214 to pass.

{¶ 8} Seconds later, Engine 211 approached the intersection traveling at a speed in excess of the posted limit. Toles slowed the engine as she approached a school bus that had stopped beyond the intersection to ensure that no children were in the street and that the intersection was clear of traffic. The firefighters did not see Ronald Anderson's minivan stopped on Johnson Street at Walnut Road.

**{¶ 9}** As Engine 211 approached, Anderson entered the intersection, and the fire truck broadsided the minivan, crushing the driver, ejecting Tate, and pushing the van for more than 360 feet before it came to rest. Tragically, both Anderson and Tate died.

**{¶ 10}** Fredrick J. Cook, a state trooper, assisted in the investigation of the accident, and in his reconstruction report, he calculated that Engine 211 had been traveling between 44 and 50 m.p.h. He also opined that given the decreased range of visibility caused by obstructions near the intersection, a driver stopped at the stop sign on Johnson Street might not have been able to see the fire truck approaching.

**{¶ 11}** Cynthia Anderson filed a wrongful-death action alleging that the city of Massillon, Toles, and Annen had willfully, wantonly, and recklessly caused the deaths of her husband and her grandson.

**{¶ 12}** Her expert, Choya R. Hawn, calculated the fire truck's minimum speed at the point of impact to be between 49 and 52 m.p.h., and he opined that because of roadside obstructions, Engine 211 was not visible to Ronald Anderson at the time he entered the intersection. Hawn also stated that he believed emergency vehicles approaching a stop sign should proceed at 10 m.p.h. or slower to ensure the ability to stop, and he further noted the danger of emergency vehicles running in tandem, because the siren of the first vehicle could have masked the siren of the second, preventing Ronald Anderson from noticing the approaching fire truck.

**{¶ 13}** Scott A. Noll, an accident reconstructionist who testified for the city and the firefighters, concluded that Engine 211 had traveled at 39 m.p.h. and that Toles had allowed adequate time and distance to evaluate the lanes of travel before proceeding through the intersection. Noll further opined that Anderson had caused the accident by failing to stop at the stop sign.

**{¶ 14}** The city, Toles, and Annen moved for summary judgment, and the trial court ruled in their favor, concluding that the city had a full defense to liability pursuant to R.C. 2744.02(B)(1)(b), because Engine 211 was responding to an emergency call and the operation of the fire truck did not constitute willful or wanton misconduct. The court further concluded that the firefighters were entitled to immunity pursuant to R.C. 2744.03(A)(6)(b), because Anderson failed to present any evidence that the firefighters had acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

**{¶ 15}** The Fifth District reversed, stating that based on "the high rate of speed at which [the fire truck] was traveling in conjunction with the claimed obstructions in the intersection that would interfere with a clear view of the whole intersection, we find that reasonable minds could find that [Toles and Annen's] actions in this case were reckless" and that the firefighters therefore were not entitled to immunity pursuant to R.C. 2744.03(A)(6)(b). *Anderson v. Massillon*, 193 Ohio App.3d 297, 2011-Ohio-1328, 951 N.E.2d 1063, ¶ 73 (5th Dist.). The court also stated that "[t]he 'wanton or reckless misconduct' standard set forth in R.C. 2744.03(A)(6) and [the] 'willful or wanton misconduct' standard set forth in R.C. 2744.02(B)(1)(b) are functionally equivalent." *Id.* at ¶ 46. The appellate court ruled that the city and its firefighters were not immune if the firefighters had acted *recklessly* in causing the collision. *Id.* at ¶ 73. It held that genuine issues of material fact existed whether the firefighters' operation of the vehicle was reckless, and thus summary judgment was not appropriate. *Id.* at ¶ 74-75.

**{¶ 16}** The city of Massillon, Toles, and Annen appealed to this court and contend that the terms "willful," "wanton," and "reckless" are not interchangeable but describe different degrees of care. They contend that R.C. 2744.02(B)(1)(b) affords a full defense to political-subdivision liability for the operation of a fire truck responding to an emergency if the operation of the vehicle does not constitute willful or wanton misconduct, and they point out that "the General

Assembly did not include reckless conduct as part of [the] exception from the 'full defense to * * * liability' found therein." Further, they argue that Toles and Annen are immune from personal liability pursuant to R.C. 2744.03(A)(6), unless they operated the fire truck in a wanton or reckless manner, emphasizing that recklessness is the perverse disregard of a known risk. In their view, the city has a full defense to liability because the firefighters did not commit willful or wanton misconduct and the firefighters have immunity because they did not act in a wanton or reckless manner.

**{¶ 17}** Anderson maintains that the appellate court properly determined that there were genuine issues of material fact regarding whether Toles and Annen operated Engine 211 recklessly, because the evidence shows that the fire truck entered a "blind intersection" controlled by stop signs at more than 52 m.p.h. without stopping or slowing down and violated city ordinances and fire-department policies. Further, Anderson emphasizes that her husband had stopped at the intersection and yielded to Engine 214, but the high rate of speed of Engine 211 combined with the visual obstructions along the road prevented him from appreciating that a second fire truck was responding to the fire. Relying on *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990), and the Restatement of the Law 2d, Torts, Anderson argues that willful or wanton misconduct is the equivalent of wanton or reckless conduct, so each standard refers only to recklessness. She also asserts that this court has mistakenly defined recklessness in civil cases as the perverse disregard of a known risk, which is the definition for recklessness found in criminal law. Anderson urges that if a greater showing than recklessness is required to deprive a political subdivision of immunity, then contrary to principles of respondeat superior, its firefighters could be liable in a tort action when the political subdivision is not.

**{¶ 18}** Accordingly, the question presented in this appeal is whether the standard in R.C. 2744.02(B)(1)(b), which affords a full defense to liability to a

6

political subdivision unless the operation of a fire-department vehicle constitutes willful or wanton misconduct, is equivalent to the standard in R.C. 2744.03(A)(6)(b), which grants immunity to employees of political subdivisions unless their acts or omissions were committed in a wanton or reckless manner.

**Law and Analysis**

*Defenses to Liability of Political Subdivisions and*

*Immunity of Political-Subdivision Employees*

{¶ 19} Two separate statutes, one dealing with full defenses to liability for a political subdivision and the other dealing with the question of immunity from suit for employees of a political subdivision, use the term "wanton" as a standard of conduct to describe when a full defense to liability arises and when an employee is immune from suit. We recognize that a defense to liability is different from immunity from suit.

{¶ 20} R.C. 2744.02(B)(1) addresses the liability of a political subdivision and full defenses for the operation of a motor vehicle by employees, including firefighters:

> Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:
>
> * * *
>
> (b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any

other emergency alarm and the operation of the vehicle did not constitute *willful or wanton misconduct*.

(Emphasis added.)

**{¶ 21}** R.C. 2744.03(A)(6) sets forth the immunity of political-subdivision employees and the exceptions thereto:

In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

* * *

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or *in a wanton or reckless manner*.

(Emphasis added.)

**{¶ 22}** Also relevant to this case is R.C. 2744.07(A)(1), which specifies:

[A] political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function. The political subdivision has the duty to defend the employee if the act or omission occurred while the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities.

And R.C. 2744.07(A)(2) states:

> [A] political subdivision shall indemnify and hold harmless an employee in the amount of any judgment, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or federal court or as a result of a law of a foreign jurisdiction and that is for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of employment or official responsibilities.

**{¶ 23}** In the foregoing statutes, the General Assembly set forth different degrees of care that impose liability on a political subdivision or on an employee of a political subdivision. The legislature expressly stated that a political subdivision has a full defense to liability when the conduct involved is not willful or wanton, and therefore, if the conduct is only reckless, the political subdivision has a full defense to liability. In addition, the legislature expressly removed immunity from employees of a political subdivision for wanton or reckless conduct in R.C. 2744.03(A)(6)(b). By implication, an employee is immune from liability for negligent acts or omissions.

*Willful, Wanton, and Reckless Conduct*

**{¶ 24}** In *Res. Trucking Co. v. Fairchild*, 128 Ohio St. 519, 531-532, 191 N.E. 745 (1934), we distinguished between willful and wanton conduct:

> While the legal effect of willful misconduct and of wanton misconduct may, in many respects, be equivalent, it can only

conduce to confusion and unsound reasoning to speak of them as though they were interchangeable terms. "Willful misconduct," as has been said, implies the element of intent or purpose to injure. "Wanton negligence," on the other hand, implies the failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great and such probability is actually known to the defendant.

{¶ 25} We further defined "wanton" in *Universal Concrete Pipe Co. v. Bassett*, 130 Ohio St. 567, 200 N.E. 843 (1936), and held at paragraph two of the syllabus:

Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury.

{¶ 26} In *Tighe v. Diamond*, 149 Ohio St. 520, 80 N.E.2d 122 (1948), we distinguished willful misconduct, which "implies an intention or purpose to do wrong, an intentional deviation from clear duty or from a definite rule of conduct, and not a mere error of judgment," *id.* at paragraph three of the syllabus, from wanton misconduct, defined as "an entire absence of all care for the safety of others and an indifference to consequences," *id.* at 526, and "a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor," *id.* at 526.

**{¶ 27}** In *Roszman v. Sammett*, 26 Ohio St.2d 94, 97, 269 N.E.2d 420 (1971), we explained that in order to establish that wanton misconduct had occurred, the evidence must show "a disposition to perversity, such as acts of stubbornness, obstinacy or persistency in opposing that which is right, reasonable, correct or generally accepted as a course to follow in protecting the safety of others."

**{¶ 28}** In *Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977), the court abandoned "disposition to perversity" as an element of the definition of wanton misconduct.

**{¶ 29}** In 1990, in companion cases considering the standard of care owed by participants in sporting activities, we adopted the definition of recklessness articulated by 2 Restatement of the Law 2d, Torts, Section 500 (1965). In *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990), and *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990), we concluded that individuals engaging in recreational or sports activities assume the ordinary risks of the activity and cannot recover for injury unless the other participant's actions were either "intentional" or "reckless," as defined by the Restatement.[1]

**{¶ 30}** Given the cross-application of these terms in our case law, it is not surprising that Ohio appellate courts have reached the conclusion that the "willful," "wanton," and "reckless" standards are "functionally equivalent." *See, e.g., Marchant v. Gouge*, 187 Ohio App.3d 551, 2010-Ohio-2273, 932 N.E.2d 960, ¶ 32 (5th Dist.); *Whitfield v. Dayton,* 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532, ¶ 34 (2d Dist.); *Brockman v. Bell*, 78 Ohio App.3d 508, 516, 605 N.E.2d 445 (1st Dist.1992); *Jackson v. Butler Cty. Bd. of Commrs.*, 76

---

1. In a footnote in *Thompson*, however, we indicated, "The term 'reckless' is often used interchangeably with 'willful' and 'wanton.' Our comments regarding recklessness apply to conduct characterized as willful and wanton as well." 53 Ohio St.3d at 104, 559 N.E.2d 705, fn.1. This footnote is the apparent source of confusion in cases decided since that time. *See, e.g., Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 639 N.E.2d 31 (1994), which seemingly equated wantonness and recklessness.

Ohio App.3d 448, 454, 602 N.E.2d 363 (12th Dist.1991). And in *Minnick v. Springfield Local Schools Bd. of Edn.*, 81 Ohio App.3d 545, 550, 611 N.E.2d 926 (1992), the Sixth District Court of Appeals noted that our treatment of the willful, wanton, and reckless standards made "a departure from the traditional definition of these terms in personal injury cases."

{¶ 31} However, as the historical development of these terms in our jurisprudence demonstrates, "willful," "wanton," and "reckless" describe different and distinct degrees of care and are not interchangeable. We therefore disavow the dicta contained in *Thompson*, 53 Ohio St.3d at 104, 559 N.E.2d 705, fn. 1, that "willfulness," "wantonness," and "recklessness" are equivalent standards.

{¶ 32} Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. *Tighe v. Diamond*, 149 Ohio St. at 527, 80 N.E.2d 122; *see also Black's Law Dictionary* 1630 (8th Ed.2004) (describing willful conduct as the voluntary or intentional violation or disregard of a known legal duty).

{¶ 33} Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Hawkins*, 50 Ohio St.2d at 117-118, 363 N.E.2d 367; *see also Black's Law Dictionary* 1613-1614 (8th Ed.2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results).

{¶ 34} Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson*, 53 Ohio St.3d at 104-105, 559 N.E.2d 705, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary*

1298-1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the *risk*, but the actor does not desire harm).

{¶ 35} The dissent claims that if the terms "willful," "wanton," and "reckless" are not construed as interchangeable, then employees of political subdivisions will be immune for their acts of willful misconduct, because R.C. 2744.03(A)(6)(b) provides express exceptions to immunity only for acts committed in a "wanton or reckless" manner. *But see* Dobbs, *The Law of Torts*, Section 26 and 27 (2000) (indicating that intentional conduct would suffice to prove recklessness and that reckless conduct would suffice to prove negligence).

{¶ 36} When the General Assembly used the terms "willful" or "wanton" in R.C. 2744.02(B)(1)(b) to deny a full defense to liability for a political subdivision and the terms wanton or reckless in R.C. 2744.03(A)(6)(b) to remove the immunity of an employee of the political subdivision, it intended different degrees of care.

{¶ 37} Further, it is well established that the violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct, but may be relevant to determining the culpability of a course of conduct. *See Higbee Co. v. Jackson*, 101 Ohio St. 75, 90, 128 N.E. 61 (1920); *Payne v. Vance*, 103 Ohio St. 59, 77, 133 N.E. 85 (1921); *Boyd v. Natl. RR. Passenger Corp.*, 446 Mass. 540, 549, 845 N.E.2d 356 (2006); *Wise v. Broadway*, 315 S.C. 273, 276, 433 S.E.2d 857 (1993); *Whitley v. Progressive Preferred Ins. Co.*, 1st Dist. No. C-090240, 2010-Ohio-356, ¶ 16; 2 Restatement of the Law 2d, Torts, Section 500, Comment e (1965).

{¶ 38} However, as the Restatement explains,

In order that the breach of [a] statute constitute reckless disregard for the safety of those for whose protection it is enacted, the statute

13

must not only be intentionally violated, but the precautions required must be such that their omission will be recognized as involving a high degree of probability that serious harm will result.

2 Restatement of the Law 2d, Torts, Section 500, Comment e (1965). Thus, as we concluded in *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, "[w]ithout evidence of an accompanying knowledge that the violations 'will in all probability result in injury,' *Fabrey* [*v. McDonald Village Police Dept.*]*,* 70 Ohio St.3d [351] at 356, 639 N.E.2d 31 [(1994)] evidence that policies have been violated demonstrates negligence at best." *Id.* at ¶ 92.

### Conclusion

{¶ 39} R.C. 2744.02(B)(1)(b) provides a political subdivision with a full defense to liability for injuries caused by the operation of a fire-department vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm if its operation does not constitute willful or wanton misconduct. R.C. 2744.03(A)(6)(b) provides immunity to employees of a political subdivision for acts that are not committed in a wanton or reckless manner.

{¶ 40} The terms "willful," "wanton," and "reckless" as used in these statutes are not interchangeable. Accordingly, the judgment of the court of appeals is affirmed as modified by our clarification of these terms, and the matter is remanded to the common pleas court for further proceedings consistent with this opinion.

Judgment affirmed.

O'CONNOR, C.J., and LUNDBERG STRATTON, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and LANZINGER, JJ., concur in judgment in part and dissent in part.

_____

**LANZINGER, J.**, concurring in judgment in part and dissenting in part.

{¶ 41} I dissent from the majority's holding that the words "willful," "wanton," and "reckless" describe different and distinct degrees of care and are not interchangeable for purposes of R.C. Chapter 2744. I also do not agree with the majority that its opinion offers "clarification" of the meaning of these three words, because the definitions overlap rather than distinguish different conduct.

{¶ 42} Although sometimes described as being on a continuum, i.e., willful conduct is more culpable than wanton, and wanton conduct is more culpable than reckless, the words are functionally equivalent in the immunity statute because each describes conduct that exceeds negligence. The city of Massillon has a defense to liability in this case if the firefighters were responding to an emergency call and did so without "*willful or wanton* misconduct." (Emphasis added.) R.C. 2744.02(B)(1)(b). The firefighters themselves are provided immunity unless they acted "with malicious purpose, in bad faith, or in a *wanton or reckless* manner." (Emphasis added.) R.C. 2744.03(A)(6)(b).

{¶ 43} If the majority is correct that the words are not interchangeable, then a political subdivision would not be liable for reckless conduct because "willful or wanton misconduct" is separate and distinct from reckless conduct. R.C. 2744.02(B)(1)(b). And employees would have immunity for their willful acts, because the word "willful" is not included as an exception to immunity along with "wanton" or "reckless." R.C. 2744.03(A)(6)(b). Stated differently, the city would be liable if the firefighters were willful and wanton, but not if they were reckless; the firefighters would be liable if they were wanton or reckless, but not if they were willful. Or in other words, willful acts would implicate the political subdivision, not the employees, and reckless acts would implicate the employees, not the political subdivision.

**{¶ 44}** This interpretation runs counter to precedent, since both political subdivisions and their employees are generally protected against litigation based on negligence, rather than on willful, wanton, or reckless conduct. *See, e.g.*, *O'Toole v. Denihan,* 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 92.

**{¶ 45}** We have stated that negligence is conduct that falls below the reasonable standard of ordinary care and relates to protecting against foreseeable risks to others. *See Menifee v. Ohio Welding Prods., Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "Negligence" is defined as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation." *Black's Law Dictionary* 1133 (9th Ed.2009) But the terms "willful," "wanton," and "reckless" within R.C. Chapter 2744 refer to something more than negligence and are used in contradistinction to it. As the First District Court of Appeals has stated,

> As the probability increases that certain consequences will flow from certain conduct, the actor's conduct acquires the character of intent and moves from negligence toward intentional wrongdoing. *See Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 126, 522 N.E.2d 511, 516 (citing 1 Restatement of the Law 2d, Torts, 15, Section 8A, Comment *b* [(1965)]). Therefore, the terms "wanton," "willful" and "reckless," as used to describe tortious conduct, might best be defined at points on a continuum between negligence, which conveys the idea of inadvertence, and intentional misconduct.

*Brockman v. Bell,* 78 Ohio App.3d 508, 514-515, 605 N.E.2d 445 (1st Dist.1992).

**{¶ 46}** Thus, reckless conduct and wanton and willful misconduct could be considered as a progression of blameworthiness, but all involve conduct that is

more than negligent. *Whitfield v. Dayton,* 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532, ¶ 34 (2d Dist.).

**{¶ 47}** The goal of the immunity statute is to protect political subdivisions and their employees from liability for negligent conduct, but not for conduct exceeding negligence. Although there may be subtle differences among "reckless," "wanton," and "willful," in the context of the immunity statute the three words all function to describe conduct greater than negligence.

**{¶ 48}** There are material issues of facts for the jury in this case as to whether the firefighters' conduct was greater than negligent—whether they intended to harm anyone (willful conduct), whether they failed to exercise any care whatsoever (wanton misconduct), or whether they knew or should have known there was a greater probability of substantial harm to anyone due to their actions (recklessness). I therefore concur in the remand to the trial court, but I would also affirm the court of appeals' order reversing summary judgment in this case.

PFEIFER, J., concurs in the foregoing opinion.

_____

Tzangas, Plakas, Mannos & Raies, Ltd., David L. Dingwell, James G. Mannos, and Edmond J. Mack; and Davis & Young and David G. Utley, for appellee.

Baker, Dublikar, Beck, Wiley & Mathews, Gregory A. Beck, Mel L. Lute Jr., and James F. Mathews, for appellant.

Murray & Murray Co., L.P.A., John T. Murray, and Patrick G. O'Connor, urging affirmance on behalf of amici curiae John Huffman and Olivia Duty.

Landskroner, Grieco, Merriman, L.L.C., and Drew Legando, urging affirmance on behalf of amicus curiae Ohio Association for Justice.

_____