[Cite as *Artim v. Lorain Cty. Bd. of Dev. Disabilities*, 2013-Ohio-2372.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

ASHLEY ARTIM, et al.

    Appellees

    v.

LORAIN COUNTY BOARD OF
DEVELOPMENTAL DISABILITIES, et al.

    Appellants

C.A. Nos.    12CA010214
                 12CA010220

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CV169819

DECISION AND JOURNAL ENTRY

Dated: June 10, 2013

---

HENSAL, Judge

{¶1} Defendants-Appellants, Lorain County Board of Developmental Disabilities ("LCBDD") and Ronald Fleming, appeal from a judgment of the Lorain County Court of Common Pleas denying their motions for summary judgment. For the reasons set forth below, this Court affirms in part and reverses in part.

I.

{¶2} Ashley Artim is the adult daughter of Plaintiffs-Appellees, Michael and Sandy Artim. She has severe cerebral palsy, a severe mental disability and seizure disorder which necessitate the use of a wheelchair and full assistance with all aspects of her personal care. She is unable to speak, but can make sounds and move her body in such a way as to express her mood and discomfort. Ashley attended the Elyria Workshop ("Workshop"), which is a facility owned and operated by LCBDD that offers programs to disabled adults. Fleming was an employee of LCBDD who worked at the Elyria Workshop. He was the sole employee in charge

of the positioning therapy room, which used equipment to help Workshop participants stretch their muscles.

{¶3} On March 19, 2010, Ashley went to positioning therapy for 30 minutes as was her normal routine. When Workshop staff took Ashley to the restroom 30 minutes after her return from positioning, they noticed that Ashley's leg was bent inward at a 90 degree angle. She was transported to the hospital, and diagnosed with a broken left femur.

{¶4} The Artims filed a complaint for personal injury and loss of consortium against LCBDD and Fleming. LCBDD and Fleming filed separate motions for summary judgment on the basis of statutory immunity from liability. The trial court denied the motions, and both LCBDD and Fleming appealed. Each raises one assignment of error for this Court's review.

## II.

### Standard of Review

{¶5} Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977). The movant must specifically identify the portions of the record that demonstrate an absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the movant satisfies this initial burden, the nonmoving party has a reciprocal burden to point to specific facts that show a genuine issue of material fact for trial. *Id*. The nonmoving party must identify some evidence that establishes a genuine issue of material fact, and may not rely upon the allegations and denials in the pleadings. *Sheperd v. Akron*, 9th Dist. No. 26266, 2012-Ohio-4695, ¶ 10.

**{¶6}** Revised Code Section 2744.02(C) provides that, "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." This Court reviews the order de novo, and may remand the case if a genuine issue of material fact remains that necessitates further development of the facts regarding the issue of immunity. *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 21.

**Ronald Fleming**

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT. (JUDGMENT ENTRY, APRIL 4, 2012).

**{¶7}** Fleming argues that he is immune from liability pursuant to Revised Code Section 2744.03 as there is no evidence he caused Artim's injuries or that he acted in a wanton or reckless manner. This Court disagrees.

**{¶8}** "An employee of a political subdivision is immune from liability unless (1) the employee acted outside the scope of his or her employment or official responsibilities, (2) the employee acted with malicious purpose, in bad faith, wantonly, or recklessly, or (3) the Revised Code expressly imposes liability on the employee." *Moss v. Lorain Cty. Bd. Of Mental Retardation*, 185 Ohio App.3d. 395, 2009-Ohio-6931, ¶ 21 (9th Dist.); R.C. 2744.03(A)(6). The Artims do not allege that Fleming exceeded the scope of his employment or that he is subject to statutory liability. They instead argue that Fleming exercised his judgment in a wanton or reckless manner while positioning Ashley.

**{¶9}** The Ohio Supreme Court recently clarified the definitions of these terms in the case of *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711. To act wantonly

means, "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." (Citation omitted.) *Id*. at paragraph three of the syllabus. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." (Citation omitted.) *Id*. at paragraph four of the syllabus.

{¶10} The parties disagree on whether Fleming caused Ashley's injuries. The only people in the positioning room during the session in question were Ashley, Fleming and three other Workshop participants. Fleming denies removing Ashley from her wheelchair during the positioning session. Fleming testified that Ashley began moaning and groaning five minutes after her arrival, which made him believe she was uncomfortable due to her menstrual period. He based this belief on his six years of experience working with Ashley on a daily basis. Because Ashley would flop around on the positioning table if she was irritable or uncomfortable, Fleming said he reclined her wheelchair back instead of lifting her onto the positioning table.

{¶11} There is, however, testimony that disputed Fleming's version of events. The staff member who transported the fourth and final individual to the therapy session testified that all three positioning devices were in use upon his arrival and he did not notice anyone sitting in a wheelchair. He did, however, see an empty wheelchair in the room. Several other Workshop employees who cared for Ashley that day did not notice anything unusual in her behavior up until her return from positioning. She was not having her menstrual period that day as Fleming suggested. A staff member noticed that Ashley appeared pale immediately after positioning, and asked fellow Workshop staff to keep a close eye on her.

{¶12} While changing Ashley in the restroom approximately 30 minutes later, staff discovered her left leg was bent inward at a 90 degree angle. Staff did not notice anything wrong with her leg during the two times she was changed earlier in the day. She was transported by ambulance to a hospital where she was diagnosed with a broken left femur. The Artims argue that whatever occurred in the positioning room during Ashley's session was done in a wanton and reckless manner due to the severity of her injury.

{¶13} Fleming argues that even if he did injure Ashley, there is no evidence he had conscious knowledge of a substantial certainty that she would be injured. The LCBDD policy in place at the time of the incident was that at least two staff members would utilize a mechanical device called a Hoyer lift to pick up Workshop participants. Prior to the institution of this policy in September 2007, Workshop staff was trained and permitted to lift participants manually using either one or two people. There is conflicting evidence whether employee or Workshop participant safety was the reason for the policy change. Fleming acknowledged violating this policy "[o]n occasion" by lifting participants himself when another staff member was not available to assist. Fleming stated that he violated the policy because he believed it was more beneficial for the participant to receive some therapy rather than none at all.

{¶14} Other Workshop staff testified that Fleming never asked for assistance in lifting participants. Fleming was trained to perform manual lifts by LCBDD prior to the policy change, and felt he could do so safely. The Artims used a one or two person manual lift to maneuver Ashley at home. On the date of the injury, however, Ashley's written training policy and procedure provided that during positioning she was to transfer into and out of her wheelchair using a hydraulic lift. Fleming's signature appeared on the written policy pertaining to Ashley.

{¶15} This Court notes that the record is devoid of objective medical criteria substantiating the diagnosis of a broken femur and the alleged severity of the injury. While Mrs. Artim testified that the treating orthopedic surgeon told her "it would take a lot of force to break [Ashley's] leg," there is no additional evidence to support her statement.

{¶16} Viewing the evidence in a light most favorable to the Artims, there is a genuine issue of material fact regarding whether Fleming's conduct was wanton or reckless. There is evidence that the two person mechanical lift policy was for the safety of both Workshop employees and participants. One can reasonably conclude this policy was implemented to obviate a "known or obvious risk of harm," and that there was a "great probability" a Workshop participant like Ashley could be harmed during an improperly executed lift. *Anderson*, 2012-Ohio-5711 at paragraphs three and four of the syllabus. Further, Ashley's written individual policy and procedure indicated she was to be transferred into and out of her wheelchair during positioning therapy using a hydraulic lift rather than a mechanical lift. By intentionally violating this policy without a reasonable purpose to do so, there is evidence that Fleming failed to exercise any care and consciously disregarded a "known or obvious risk of harm," which a jury might conclude is greater than negligence. *Id.* at paragraph four of the syllabus. Based upon the foregoing, this Court overrules Fleming's only assignment of error.

## LCBDD

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT BASED UPON IMMUNITY BY HOLDING THAT AN EXCEPTION TO IMMUNITY EXISTED UNDER R.C. 2744.02(B)(4) WHERE THERE WAS NO EVIDENCE OF A PHYSICAL DEFECT ON DEFENDANT-APPELLANT'S PREMISES THAT CAUSED PLAINTIFF'S INJURY.

{¶17} LCBDD argues that the trial court should have granted its motion for summary judgment on the basis of statutory immunity because there is no evidence that a physical defect in the positioning room caused Ashley's injury. This Court agrees.

{¶18} Revised Code Section 2744.02(A)(1) provides that political subdivisions are not "liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." A county board of developmental disabilities such as LCBDD is a political subdivision and the operation of its facilities constitutes a governmental function. *Moss*, 2009-Ohio-6931 at ¶ 11; R.C. 2744.01(C)(2)(o).

{¶19} There are, however, exceptions to this immunity. The Artims maintain that R.C. 2744.02(B)(4) establishes that LCBDD is not immune since "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function[.]" They specifically argue that Ron Fleming caused Ashley's injury on the premises of LCBDD property, and that the injury was due to a "physical defect" within the positioning room. The Artims argued that the defects in the room were: (1) its lack of windows on the outside wall to allow others to look in; (2) no camera to record what happened in the room; and (3) the fact that Fleming was the only staff member who worked there much of the time.

{¶20} While there is a dispute as to whether Fleming caused Ashley's injury, there is no evidence that the injury was in any way due to a physical defect in the positioning room. There was nothing about the design of the room itself that led Fleming to use the single person lift

technique over the two person mechanical lift. The door was unlocked during positioning sessions and anyone could look into the room from a window on the door. The adjoining therapy room was occupied several half days per week and Workshop employees entered and exited the positioning room numerous times per hour when they dropped off or picked up participants.

{¶21} Based upon the lack of evidence establishing a physical defect, this Court finds that LCBDD is entitled to judgment as a matter of law on the basis of immunity afforded by Section 2744.02(A)(1). LCBDD's one assignment of error is sustained.

III.

{¶22} Fleming's only assignment of error is overruled as the trial court correctly denied his motion for summary judgment because a genuine issue of material fact exists regarding whether his conduct was wanton and reckless. LCBDD's only assignment of error is sustained as the court incorrectly denied its motion for summary judgment as it is immune from liability on the Artims' claims. The judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and case remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

9

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to the Artims and Fleming.

_____
JENNIFER HENSAL
FOR THE COURT


WHITMORE, J.
CONCURS.

CARR, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶23} I concur in the majority's opinion with regard to LCBDD's assignment of error.

{¶24} I respectfully dissent with regard to Mr. Fleming's assignment of error. I disagree that evidence of Mr. Fleming's violation of the facility's lift policy creates a genuine issue of material fact as to whether he acted in a reckless or wanton manner instead of a mere negligent manner. The majority cites *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraphs three and four of the syllabus, to explain the distinctions between conduct that is wanton versus conduct that is reckless. The *Anderson* court further held that "[t]he violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct, but may be relevant to determining the culpability of a course of conduct." *Id.* at paragraph five of the syllabus. Moreover, "[w]ithout evidence of an

accompanying knowledge that the violations will in all probability result in injury, evidence that policies have been violated demonstrates negligence at best." (Internal citation and quotations omitted) *Id.* at ¶ 38, quoting *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 92.

**{¶25}** In this case, the Artims did not present any evidence tending to show that Mr. Fleming knew that his violation of the two-person lift policy would in all probability result in Ashley's injury. In fact, there was evidence that Ashley's parents themselves routinely lifted their daughter in the same manner as Mr. Fleming was alleged to have used, and Ashley had never sustained such an injury under those circumstances.

**{¶26}** Based upon the lack of evidence establishing that Mr. Fleming knew that his violation of the facility's lift policy would in all probability result in injury to Ashley, I would conclude that Mr. Fleming was entitled to judgment as a matter of law on the basis of immunity pursuant to R.C. 2744.03(A)(6). I recognize the parents' grief upon learning that, despite their best efforts to provide Ashley with a safe and therapeutic environment, she sustained injury. However, the law is clear in its intent to limit the liability of governmental actors. Accordingly, I would sustain Mr. Fleming's assignment of error, reverse the trial court's judgment denying his motion for summary judgment, and enter summary judgment in his favor.

APPEARANCES:

KENNETH A. CALDERONE and JOHN R. CHLYSTA, Attorneys at Law, for Appellant.

NICK C. TOMINO, Attorney at Law, for Appellant.

THOMAS C. STRINGER, Attorney at Law, for Appellees.