[Cite as *Ogburn v. Toledo*, 2019-Ohio-163.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Linda H. Ogburn, etc.                                    Court of Appeals No. L-18-1045

    Appellant                                        Trial Court No. CI0201602165

v.

City of Toledo                                           **DECISION AND JUDGMENT**

    Appellee                                         Decided:  January 18, 2019

* * * * *

Robert M. Scott, for appellant.

Dale R. Emch, Director of Law, Jeffrey B. Charles, Chief of
Litigation, and Merritt W. Green III, Senior Attorney, for appellee.

* * * * *

**JENSEN, J.**

## I.  Introduction

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, granting summary judgment in favor of appellee, the city of Toledo, and

dismissing the wrongful death action brought by appellant, Linda Ogburn.

## A. Facts and Procedural Background

{¶ 2} On April 1, 2016, appellant, acting as personal representative and administratrix of the estate of Lonnie Holmes, filed a wrongful death complaint with the trial court, in which she alleged that Holmes was injured, and ultimately died three days later, when he was struck by a fire hose that had broken free from one of the Toledo Fire and Rescue Department's (TFRD) fire engines, Engine No. 9, as it was responding to an emergency call on October 18, 2014. Appellant asserted that the city's agents (the TFRD and its firefighters) intentionally removed a safety device from the truck that was designed to secure the hose while the truck was in operation. Appellant further alleged that the intentional removal of the safety device constituted willful and/or wanton misconduct, thereby eliminating the city's immunity under Chapter 2744 of the Ohio Revised Code.

{¶ 3} On June 20, 2016, the city responded to appellant's complaint by the filing of an answer, in which it denied liability and asserted several affirmative defenses, including immunity under Chapter 2744 of the Ohio Revised Code. Thereafter, appellant engaged in discovery, ultimately deposing the four firefighters that operated Engine No. 9 on October 18, 2014, as well as the TFRD's fire maintenance officer. Additionally, appellant retained the services of Leo Debobes, an expert witness in the field of fire department practices and safety.

{¶ 4} Seven months after the city submitted its answer, it filed a motion for summary judgment. In its motion, the city argued that it was entitled to immunity under

2.

R.C. 2744.02(B) because Engine No. 9 was on an emergency call at the time of the injury and there was no evidence of willful or wanton misconduct on the part of the city. While the city acknowledged that its agents had removed the safety net that was installed on Engine No. 9 by the manufacturer, it argued that it did not act without care with respect to the fire hoses because it installed holsters on its fire engines that housed the fire hose nozzles. The city urged that the holsters were reasonable replacements for the safety nets, as they were also designed to secure the fire hoses and were necessary in order to aid firefighters in quickly and efficiently putting out fires. Further, the city rejected any contention that it acted with knowledge or appreciation of the likelihood of injury where there had been no incidents concerning the inadvertent release of hoses on its fire engines since it replaced the safety nets with holsters several years prior.

{¶ 5} On May 31, 2017, appellant filed her memorandum in opposition to the city's motion for summary judgment. In her memorandum, appellant contended that the city willfully and wantonly violated the applicable standard in this case, which appellant claimed was set by the National Fire Protection Association in NFPA 1901 15.10.7 and A.15.10.7, by intentionally removing the safety nets from Engine No. 9.[1] As to the city's

---

[1] NFPA 1901 15.10.7 and A.15.10.7 provides:

> 15.10.7 Any hose storage area shall be equipped with a positive means to prevent unintentional deployment of the hose from the top, sides, front, and rear of the hose storage area while the apparatus is underway in normal operations.

3.

claimed lack of knowledge of any danger arising from the removal of the safety nets, appellant argued that such danger was widely known in the industry and formed the basis for the NFPA's promulgation of NFPA 1901 15.10.7 and A.15.10.7. Further, appellant argued that the city's installation of a holster for the hose nozzle was not a sufficient replacement for the safety net that was installed on Engine No. 9 by the manufacturer, because the holster would not prevent the hose itself from unraveling and falling off of the fire engine during an emergency run. Therefore, appellant urged that there was a genuine issue of material fact as to whether the city operated Engine No. 9 in a willful or wanton manner and, as such, summary judgment was inappropriate.

{¶ 6} In support of her argument, appellant referenced Debobes' expert opinion that the NFPA's published standards are authoritative standards that must be followed by all fire departments in the United States. In his affidavit, which was attached to

---

A.15.10.7 Many fire departments have experienced fire hose inadvertently coming off fire apparatus while traveling to and from incidents. Several incidents have resulted in personal injury and damage to property. At least one death is directly attributable to an unintentional deployment of fire hose during a response. It is imperative that the fire apparatus manufacturer provide and the fire department use a means to assure this does not occur.

Fire departments and manufacturers have developed various methods of preventing inadvertent deployment of fire hose including: fully enclosed hose beds covers, buckled straps, hook and loop straps, fabric covers, webbing mesh, wind deflectors, and other material restraints or combination of restraints. It is also important that fire departments develop methods of storing hose connected nozzles and appliances in a manner that does not promote the inadvertent deployment of the hose, nozzle or appliance.

appellant's memorandum, Debobes testified that the city violated NFPA 1901 15.10.7 and A.15.10.7 by removing the safety net from its fire engines, and further opined that this violation constituted willful and wanton misconduct reflecting a serious disregard for public safety. Debobes went on to state that the city's removal of the safety net in this case proximately caused Holmes' injury and subsequent death.

{¶ 7} On August 18, 2017, the city filed its reply to appellant's memorandum in opposition, in which it argued that appellant was incorrect in her assertion that NFPA 1901 15.10.7 and A.15.10.7 constituted a legal standard to which the city was bound. According to the city, NFPA 1901 15.10.7 and A.15.10.7 have not been adopted by the Ohio Administrative Code, the Ohio Revised Code, or the TFRD. Thus, the city asserted that appellant's reliance on NFPA 1901 15.10.7 and A.15.10.7 was misplaced. Nonetheless, the city asserted that its installation of holsters in place of the safety nets was in compliance with NFPA 1901 15.10.7 and A.15.10.7. Further, the city argued that Debobes' legal conclusions contained in his affidavit were inadmissible and should be disregarded by the trial court. Ultimately, the city asserted that appellant failed to introduce any evidence to establish that it acted willfully or wantonly with respect to its removal of the safety net from Engine No. 9.

{¶ 8} Upon consideration of the foregoing arguments, the trial court issued its decision on February 9, 2018. In its decision, the trial court found that NFPA 1901 15.10.7 and A.15.10.7 constituted a binding legal standard of care in this case, based upon Debobes' expert testimony and the NFPA publication that was contained in the

5.

record. After examining the language contained in NFPA 1901 15.10.7, the trial court found that reasonable minds could conclude that the city's use of nozzle holsters as a substitute for safety nets constituted a breach of the standard of care set forth in NFPA 1901 15.10.7 and A.15.10.7. However, the court found that the alleged breach was at most negligent, and could not be construed as willful or wanton.

{¶ 9} Referencing the deposition testimony of the city's fire maintenance officer, the court found that the city's removal of the safety nets was brought about by firefighter safety concerns posed by the safety nets hanging off the back of the fire engine when the fire hoses were deployed, causing the hoses to tangle and tripping firefighters. The court concluded that the city installed holsters in place of the nets as a means to secure the fire hoses and expedite deployment during an emergency. Thus, the court found that reasonable minds could only find that the city did not fail to exercise any care or intend to cause harm when it removed the safety nets and installed the holsters. Further, the court noted that the city's installation of holsters in place of safety nets proved to be "one-hundred percent effective" at securing fire hoses on the city's fire engines for the seven years between installation of the holsters and Holmes' injury. Given this track record, the court found that reasonable minds could only conclude that the risk of injury stemming from the removal of the safety nets was less than probable, and thus the city's removal of said nets could not constitute willful or wanton misconduct.

{¶ 10} Having concluded that appellant failed to demonstrate willful or wanton misconduct on the part of the city concerning its replacement of the safety net on Engine

6.

No. 9 with a nozzle holster, the trial court found that the city was entitled to immunity under R.C. 2744.02(B), and granted the city's motion for summary judgment.

## B. Assignments of Error

{¶ 11} Following the trial court's grant of summary judgment to the city, appellant filed her timely notice of appeal, in which she raises the following assignments of error for our review:

Assignment of error No. 1: The trial court erred in granting summary judgment as material questions of fact exist regarding whether appellee city of Toledo is entitled to the immunity afforded by R.C. 2744.02 because the operation of Engine No. 9 on October 18, 2014 constituted willful or wanton misconduct.

Assignment of error No. 2: The trial court erred by failing to construe the evidence in a light most favorable to appellant as the non-moving party.

## II. Analysis

{¶ 12} In her assignments of error, appellant argues that the trial court erred in granting the city's motion for summary judgment. Specifically, appellant contends that the city was not entitled to summary judgment on her wrongful death claim because material questions of fact existed on the issue of whether the city committed willful or wanton misconduct, thereby negating the city's immunity under R.C. 2744.02. Because appellant's assignments of error are interrelated, we will address them simultaneously.

7.

## A. Standard of Review

{¶ 13} A motion for summary judgment is reviewed de novo by an appellate court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "When reviewing a trial court's ruling on summary judgment the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Baker v. Buschman Co.*, 127 Ohio App.3d 561, 566, 713 N.E.2d 487 (12th Dist.1998).

{¶ 14} In order to obtain summary judgment at the trial level,

> [I]t must be determined that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994), citing *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 65-66, 609 N.E.2d 144 (1993); see also Civ.R. 56(C).

## B. The City is Immune from Liability on Appellant's Wrongful Death Claim

{¶ 15} In her assignments of error, appellant argues that the trial court erred in finding that the city was immune from liability on her wrongful death claim under R.C. 2744.02.

{¶ 16} When determining whether a political subdivision is immune from liability, we engage in a "three-tiered analysis." *Rosenbrook v. Bd. of Lucas Cty. Commrs.*,

8.

2015-Ohio-1793, 33 N.E.3d 562, ¶ 15 (6th Dist.), citing *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10. First, we examine whether the general grant of immunity provided by R.C. 2744.02(A) applies. *Id.* If immunity applies, we then examine whether immunity has been abrogated by the exceptions set forth in R.C. 2744.02(B). *Id.* If an exception applies, the third tier involves a determination of whether the political subdivision is able to successfully assert one of the defenses listed in R.C. 2744.03, thereby reinstating its immunity. *Id.*

{¶ 17} Here, the city qualifies for immunity as a political subdivision under R.C. 2744.02(A). However, appellant argues that the city's immunity has been abrogated pursuant to R.C. 2744.02(B)(1).

{¶ 18} R.C. 2744.02(B)(1) provides:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

* * *

(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is

9.

believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct.

{¶ 19} It is undisputed that Holmes was injured when he was struck by a fire hose that broke free from its restraints on Engine No. 9, a fire truck owned by the city and operated by its employees. Moreover, it is clear that the firefighters were operating within their scope of employment and authority and responding to an emergency call, thereby triggering the heightened standard of "willful or wanton misconduct" under R.C. 2744.02(B)(1)(b). Accordingly, we must review whether the city's operation of Engine No. 9 without the manufacturer-installed safety net constituted misconduct sufficient to remove the city from the statutory immunity set forth above.

{¶ 20} The Supreme Court of Ohio has defined the terms "willful" and "wanton," indicating that they are two distinct concepts. "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph two of the syllabus. "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at paragraph three of the syllabus. These standards "describe conduct that is more than mere negligence. * * * If reasonable minds could only conclude that the * * *

conduct demonstrates, at most, negligence, then summary judgment is appropriate."
*Hoffman v. Gallia Cty. Sheriff's Office*, 2017-Ohio-9192, ¶ 47, 103 N.E.3d 1 (4th Dist.).

{¶ 21} Applying the foregoing standards to this case, appellant is required to demonstrate that the city knew or should have known that injury to others would be the probable result of removing the safety net on Engine No. 9 in order to establish willful misconduct. *Tighe v. Diamond*, 149 Ohio St. 520, 527, 80 N.E.2d 122 (1948). Likewise, in order to demonstrate wanton misconduct, appellant must demonstrate that the city failed to exercise *any* care in circumstances in which there is *great probability* that harm will result.

{¶ 22} The evidence contained in the record by way of deposition testimony reveals that the city removed the safety nets on its fire engines to facilitate firefighter safety, based upon incidents in which TFRD firefighters were tripped by the nets when they were attempting to utilize fire hoses. According to TFRD's fire maintenance officer, the nets also slowed down firefighting efforts that are time-sensitive in nature. As a result, TFRD decided to remove the safety nets and install holsters in their place. The holsters that were installed eliminated the trip hazard presented by the nets, while at the same time facilitating expedient use of the fire hoses. Since the nets were removed and the holsters installed, the city has safely completed over one million runs without a fire hose coming loose from a fire engine. To us, the fact that over one million runs have taken place without incident demonstrates that injury to others does not ordinarily follow from the removal of safety nets and installation of the holsters.

11.

{¶ 23} Notwithstanding that, appellant argues that the city was on notice of the risk of injury attendant to the removal of the safety net, based upon the language contained in NFPA 1901 15.10.7 and A.15.10.7. NFPA 1901 A.15.10.7 mentions the fact that "[m]any fire departments have experienced fire hose inadvertently coming off fire apparatus while traveling to and from incidents." However, NFPA 1901 A.15.10.7 does not detail the circumstances surrounding the prior incidences in which hoses were inadvertently unsecured from fire engines, and fails to identify whether the fire engines involved in those incidences utilized a nozzle holster system similar to the one deployed by the city. Further, there is no evidence that the firefighters involved in this case actually knew of the NFPA provision when the safety nets were removed and replaced with nozzle holsters. Thus, the record does not support a finding that the city failed to exercise any care or intended to harm others when it removed the safety net on Engine No. 9.

{¶ 24} In light of the foregoing, we conclude that the evidence, construed in a light most favorable to appellant as the nonmoving party, could only lead a reasonable person to conclude that the city's removal of the safety net on Engine No. 9 did not rise to the level of willful or wanton misconduct. Consequently, the trial court did not err in awarding summary judgment to the city after concluding that the city is entitled to immunity on appellant's wrongful death claim.

{¶ 25} Accordingly, appellant's assignments of error are not well-taken.

12.

### III. Conclusion

{¶ 26} Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs are hereby assessed to appellant in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, J.

_____
JUDGE

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.