[Cite as *Smith v. Landfair*, 194 Ohio App.3d 468, 2011-Ohio-3043.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SMITH,

     Appellant,

     v.

LANDFAIR et al.,

     Appellees.

C.A. No. 25371

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. CV 2009-03-2476

DECISION AND JOURNAL ENTRY

Dated: June 22, 2011

APPEARANCES:

John K. Rinehardt, for appellant.

Kenneth A. Calderone and John R. Chlysta, for appellee.

BELFANCE, Judge.

{¶1} Plaintiff-appellant, Roshel Smith, appeals from the ruling of the Summit County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee Donald Landfair on Smith's claims. For the reasons set forth below, we affirm in part and reverse in part.

I

{¶2} In 2007, Landfair boarded two of his horses, Green Acre Patty ("Patty") and Green Acre Annie ("Annie"), at CJS Standardbred Stables ("CJS") at the Wayne County

fairgrounds. At the time, Landfair had been a licensed livestock dealer for 40 years and had been involved with horses for over 60 years. Ms. Smith's father, Ernest Smith, owned and operated CJS and had been in the business of harness racing and horse training for 15 years. Landfair brought Patty and Annie to CJS and Mr. Smith for breaking and training in harness racing in 2006 and 2007, respectively. The amount of training Annie had when she arrived at CJS in 2007 is disputed, including how many times Annie had been on a trailer. It is undisputed that Annie was trained to be led.

{¶3} Mr. Smith had daily contact with Annie and found her "to be skittish and to behave in a manner completely consistent with an unbroken untrained horse of that age." Ms. Smith, who was 24 at the time of these events and had extensive horse experience, also was involved in Annie's care. From 2000 through August 2008, Ms. Smith worked for her father assisting in the care and management of the horses at CJS. Ms. Smith observed Annie acting "skittish" a few times but did not think that her behavior was unusual.

{¶4} In March 2007, Annie was two years old and weighed approximately 750-800 pounds. Due to Annie's temperament and lack of training, Smith advised Landfair not to remove Annie from the property to have her shod, because Mr. Smith had a blacksmith that came to his barn. Against Mr. Smith's advice, on March 28, 2007, Landfair loaded Patty and Annie onto his trailer and transported them without incident, or assistance, to be shod by his preferred blacksmith. He also unloaded the horses at the blacksmith's place and loaded them without difficulty after the blacksmith finished.

{¶5} Upon returning to CJS, Landfair parked his truck and trailer on a paved area adjacent to a roadway that passed between the stables and the racetrack. Ms. Smith was at CJS that day but was not working at the time. She came to the stables to seek real estate advice from

her father, Mr. Smith, and was observing Mr. Smith exercise a horse on the track when Landfair returned.

{¶6} Ms. Smith noticed Landfair unload Patty without incident and said "hi" to him when he put Patty in her stall. Ms. Smith then saw Landfair return to the trailer to unload Annie. While Landfair was preparing to unload Annie, an Amish horse-drawn wagon came down the adjacent road. Landfair, who had hearing aids, did not hear or see the wagon until he was in the process of leading Annie from the trailer. It is not disputed that the line of sight from the trailer to the wagon was not obstructed. The loud noise made by the wagon spooked Annie, causing her to push Landfair off the trailer. Landfair fell, but maintained a hold on the lead line attached to Annie. Around this time, Ms. Smith heard a commotion coming from the trailer and saw Landfair on the ground with Annie prancing around him. Ms. Smith was worried that Annie would step on Landfair and injure him. Thus, she ran over towards Landfair and the prancing horse. As Ms. Smith was trying to help Landfair, Annie kicked her, causing her severe facial and head injuries.

{¶7} As a result of the injuries, Ms. Smith filed suit against Landfair and five John Doe defendants asserting that Landfair "acted negligently by attempting to handle the untrained horse, failing to seek assistance when unloading the horse from the trailer and was otherwise negligent." Ms. Smith never amended her complaint to identify the John Doe defendants. Landfair answered and asserted, inter alia, that he was immune pursuant to R.C. 2305.321. Landfair moved for summary judgment on the basis of immunity pursuant to R.C. 2305.321 and assumption of the risk. Ms. Smith opposed the motion and argued for the first time that questions of fact existed with respect to whether Landfair's conduct was merely negligent or whether it was wanton. Ms. Smith later moved to amend her complaint to include allegations of

wantonness; however, that motion was not ruled upon. The trial court held a hearing on the summary-judgment motion. The trial court found in favor of Landfair on Ms. Smith's complaint, concluding that the immunity statute applied and that Ms. Smith had not demonstrated that Landfair's conduct was wanton.

{¶8} Smith has appealed to this court, raising five assignments of error, several of which will be discussed out of sequence to facilitate our review.

II

ASSIGNMENT OF ERROR III

The trial court erred in its application of R.C. []2305.321(A)(3)(g) of the equine immunity statute finding that appellant was a "spectator" as a matter of law.

{¶9} Ms. Smith asserts in her third assignment of error that the trial court erred in concluding that she was a spectator under the equine-immunity statute.

{¶10} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. "Pursuant to Civ.R. 56(C), summary judgment is appropriately rendered when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339-340, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

{¶11} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issues of material fact exist. *Dresher v. Burt* (1996), 75 Ohio

St.3d 280, 292.  The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist.  Id. at 293.

{¶12}  We begin with a discussion of the equine-immunity statute.  The statute provides that:

> Except as provided in division (B)(2) of this section and subject to division (C) of this section, an equine activity sponsor, equine activity participant, equine professional, veterinarian, farrier, or other person is not liable in damages in a tort or other civil action for harm that an equine activity participant allegedly sustains during an equine activity and that results from an inherent risk of an equine activity. Except as provided in division (B)(2) of this section and subject to division (C) of this section, an equine activity participant or the personal representative of an equine activity participant does not have a claim or cause of action upon which a recovery of damages may be based against, and may not recover damages in a tort or other civil action against, an equine activity sponsor, another equine activity participant, an equine professional, a veterinarian, a farrier, or another person for harm that the equine activity participant allegedly sustained during an equine activity and that resulted from an inherent risk of an equine activity.

R.C. 2305.321(B)(1).  Under the statute, an "'[e]quine' means a horse, pony, mule, donkey, hinny, zebra, zebra hybrid, or alpaca."  R.C. 2305.321(A)(1).  Relevant to the facts of the instant case, an "equine activity," includes "[t]he trailering, loading, unloading, or transporting of an equine."  R.C. 2305.321(A)(2)(a)(iv).  Neither side appears to dispute that Landfair was engaged in an equine activity, although they dispute whether Landfair was an equine-activity participant.  See R.C. 2305.321(A)(3) (defining equine-activity participant).  Notwithstanding the status of Landfair, the statute is applicable only if Ms. Smith is an equine-activity participant, which is the central issue presented in this case.

{¶13}  An "'[e]quine activity participant' means a person who engages in any of the following activities, regardless of whether the person is an amateur or a professional or whether a fee is paid to participate in the particular activity:  (a) [r]iding, training, driving, or controlling in

any manner an equine, whether the equine is mounted or unmounted; * * * (e) [a]ssisting a person who is engaged in an activity described in division (A)(3)(a), (b), (c), or (d) of this section; [or] * * * (g) [b]eing a spectator at an equine activity." Id. In Landfair's motion for summary judgment, he maintained that Ms. Smith was an equine-activity participant because she was either a spectator, R.C. 2305.321(A)(3)(g), or was assisting Landfair in controlling Annie, R.C. 2305.321(A)(3)(e). The trial court rejected the notion that Smith was "assisting" Landfair. The trial court concluded nonetheless that Ms. Smith was an equine-activity participant because she was a spectator under the statute. Ms. Smith argues that she was not a spectator within the meaning of the statute because she noticed Landfair unloading Annie only in her peripheral vision. Ms. Smith further contends that the trial court erred in its application of *Allison v. Johnson* (June 2, 2001), 11th Dist. No. 2000-T-0116, because the facts of the instant matter are distinguishable from the facts of *Allison*. We agree.

{¶14} Unfortunately, the legislature has not defined "spectator" in the statute. "[W]hen words are not defined in a statute they are to be given their common and ordinary meaning absent a contrary legislative intent." *Moore Personnel Serv., Inc. v. Zaino*, 98 Ohio St.3d 337, 2003-Ohio-1089, at ¶ 15. The common, ordinary meaning of spectator is "[o]ne who attends and views a show, sports event or the like." The American Heritage Dictionary of the English Language (1981) 1241. See also *Allison* at *5 (examining common dictionary definitions of spectator, including " 'one that looks on or beholds; * * * one witnessing an exhibition[; and] * * * a person who watched without participating' ").

{¶15} While one might ordinarily conclude that someone who is a spectator is viewing an event or exhibition, such as a horse show, the legislature has envisioned that a person can be a spectator of any equine activity, including the trailering of a horse and the normal daily care of a

horse.  See R.C. 2305.321(A)(2)(a)(iii) and (iv) and 2305.321(A)(3)(g).  For example, one could be a spectator while watching a farrier engaged in the process of placing shoes on a horse.  Nonetheless, the word "spectator" should not be interpreted so that any individual who glances at a horse and is thereafter injured by it becomes a spectator of an equine activity and thereby an equine-activity participant.  Indeed, such a view would distort the common and ordinary meaning of the word and would require a conclusion that any person, even a mail carrier who happens to momentarily glance at a horse or has some awareness in his peripheral vision that a horse is engaged in some activity, is deemed a spectator.  Even the *Allison* court, which utilized a broad definition of spectator, noted that there must be some limits placed on the meaning of the word spectator:

> The mandate in this case should not be construed to hold that those granted immunity under this provision would be immune in all circumstances where an individual happens to see a horse and has an unfortunate physical contact with such animal or is injured as a result of a force in motion caused by such equine.

*Allison* at *7.

{¶16}  Viewing the evidence in a light most favorable to Ms. Smith, we cannot conclude that Ms. Smith was a spectator.  Ms. Smith testified at her deposition as follows:

> Q.  When Landfair arrived back at the fairgrounds, were you present?
>
> [Ms. Smith:]  Yes.
>
> Q.  And what happened when he arrived back?
>
> [Ms. Smith:]  He unloaded Green Acre Patty and put her in the stall, and I said hi, asked him how he was doing, being nice.  He went to get Annie and I was standing in the barn doorway, and I was watching my father out in the track with one of our horses, and I was waiting for him to come back, and that's when the accident occurred.
>
> * * *

Q. Did he have anybody helping him when he unloaded Green Acre Patty?

[Ms. Smith:] I don't know.

Q. Did you see anyone helping him?

[Ms. Smith:] It was in my peripheral vision and I was watching my dad.

* * *

Q. And then you said the accident happened, what is it that you observed happen?

[Ms. Smith:] First, I heard a commotion and I glanced over and Annie had pushed Landfair out of the trailer and Landfair was on the ground, and then Annie proceeded to jump out of the trailer, and she was starting to step on him and he still had ahold of the line, and that's when I ran after and I don't remember very much after that.

It is clear from Ms. Smith's testimony that unlike the appellant in *Allison*, Ms. Smith was not watching the equine activity at issue, namely Landfair unloading Annie. The *Allison* court focused on the fact that the appellant was actually watching the appellee lead the horse. Id. at *5 ("In particular, appellant's deposition testimony reveals that while she did not participate or help appellee lead the horse, she did admit to watching this activity take place"). Smith specifically stated that she was watching and waiting for her father and that she was not watching Landfair. She said that she saw Landfair only out of her peripheral vision and that she did not even notice if anyone was helping him. Thus, we conclude as a matter of law that Ms. Smith was not a spectator.

{¶17} Further, we agree with the trial court's conclusion that Ms. Smith was not an equine-activity participant by means of "assisting" Landfair in controlling Annie. See R.C. 2305.321(A)(3)(e). Ms. Smith was specifically asked in her deposition if she moved towards Landfair to "help gain control of the horse." Ms. Smith responded, "No, I was moving towards him to help him." This is further corroborated by her later deposition testimony, when she

answered affirmatively that she was trying to help Landfair. Further, from the record it appears that even if we were to consider that Ms. Smith was trying to assist Landfair in controlling Annie, Ms. Smith was injured before she was able to actually render any assistance in controlling Annie.

{¶18} Therefore, we conclude that because Ms. Smith was not a spectator of an equine activity, nor was she assisting Landfair in controlling Annie, Ms. Smith was not an equine-activity participant as a matter of law. We sustain Ms. Smith's third assignment of error. Further, in light of the fact that Ms. Smith is not an equine-activity participant, her claim is not barred by the equine-immunity statute. See R.C. 2305.321(B)(1).

## ASSIGNMENT OF ERROR II

The trial court erred in granting summary judgment where the defendant failed to exercise any care whatsoever and reasonable minds could conclude such conduct was wanton.

## ASSIGNMENT OF ERROR IV

The trial court erred in its application of R.C. []2305.321(a)(3)(a) of the equine immunity statute finding that appellee was "controlling" his horse as a matter of law.

{¶19} Ms. Smith maintains in her second assignment of error that disputes of fact remain with respect to whether Landfair's conduct was wanton. Ms. Smith asserts in her fourth assignment of error that the trial court erred in finding that Landfair was controlling Annie under that statute.

{¶20} In light of our resolution of Ms. Smith's third assignment of error, we conclude that her second and fourth assignments of error are rendered moot and we decline to address them. App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR I

The trial court erred in holding that the equine immunity statute extinguished the common law rescue doctrine.

**{¶21}** Ms. Smith asserts in her first assignment that the trial court erred in concluding that R.C. 2305.321 abrogated the rescue doctrine. We note that the trial court specifically held that "the language of the equine immunity statute is broad enough to abrogate the common law rescue doctrine *for those protected under* R.C. 2305.321." (Emphasis added.) Because this court has determined that Landfair cannot avail himself of the protections afforded by the equine-immunity statute, the question whether a plaintiff can assert the rescue doctrine even if the defendant is immune is not properly before us. Accordingly, we decline to address Ms. Smith's first assignment of error.

ASSIGNMENT OF ERROR V

The trial court erred in failing to grant plaintiff's motion for leave to amend her complaint.

**{¶22}** Ms. Smith asserts in her fifth assignment of error that the trial court erred in failing to grant her motion to allow her amend her complaint to plead wanton misconduct.

**{¶23}** We note that despite the trial court's failure to rule on Ms. Smith's motion, the trial court thoroughly discussed wanton misconduct in its entry. Thus, assuming without deciding that it was error for the trial court to fail to grant the motion, we conclude that any error was harmless because Ms. Smith received the benefit of the trial court's consideration of her allegations concerning wanton misconduct. See Civ.R. 61. Ms. Smith's fifth assignment of error is therefore overruled.

III

**{¶24}** In light of the foregoing, we sustain Ms. Smith's third assignment of error, and therefore we reverse the trial court's grant of summary judgment to Landfair. In addition, we

overrule Ms. Smith's fifth assignment of error. Ms. Smith's remaining assignments of error are either moot or not properly before us. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

———

DICKINSON, P. J., and MOORE J., concur.