[Cite as *Smith v. Landfair*, 2014-Ohio-3314.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ROSHEL SMITH

    Appellant

    v.

DONALD LANDFAIR, et al.

    Appellees

C.A. No.     25371

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2009-03-2476

DECISION AND JOURNAL ENTRY

Dated: July 30, 2014

BELFANCE, Judge.

{¶1} Plaintiff-Appellant Roshel Smith appeals the trial court's award of summary judgment to Defendant-Appellee Donald Landfair. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2} In 2007, Mr. Landfair boarded two horses, Green Acre Patty ("Patty") and Green Acre Annie ("Annie") at CJS Standardbred Stables ("CJS") in Wayne County. Ms. Smith's father Ernest Smith owned and operated CJS, and Ms. Smith worked at the stables from 2002 to 2008. In March 2007, Mr. Landfair transported Patty and Annie to the blacksmith to have them shod. Upon his return to the stables, Mr. Landfair unloaded Patty without incident and took her into the stables. Ms. Smith was waiting for her father to finish a training session with a horse so she could speak with him and saw Mr. Landfair unload Patty. Mr. Landfair returned to the trailer to unload Annie. However, as he began to remove her from the trailer, a horse-drawn cart with

metal wheels rolled past the trailer, spooking Annie.  Annie knocked Mr. Landfair to the ground and began to prance around him excitedly.  Ms. Smith, observing the incident, ran towards Mr. Landfair to assist him and was kicked in the face by Annie, sustaining severe injuries.

{¶3}    Ms. Smith filed a complaint against Mr. Landfair, alleging that he was negligent in his handling of Annie.  Ms. Smith alleged that Mr. Landfair knew Annie to be skittish and that he was physically unable to control Annie.  Following discovery, Mr. Landfair moved for summary judgment, alleging that he was immune under R.C. 2305.321, which grants immunity to people participating in equine activities.  Ms. Smith moved in opposition, but the trial court determined that there was no genuine dispute of material fact and that R.C. 2305.321 prevented Ms. Smith from recovering as a matter of law.

{¶4}    Ms. Smith appealed, and this Court reversed, determining that Ms. Smith was not an equine activity participant as a matter of law and, thus, Mr. Landfair was not entitled to immunity under the equine immunity statute.  *Smith v. Landfair*, 194 Ohio App.3d 468, 2011-Ohio-3043, ¶ 18 (9th Dist.).  Mr. Landfair appealed this Court's decision, and the Supreme Court reversed, concluding that Ms. Smith was an equine activity participant.  *Smith v. Landfair*, 135 Ohio St.3d 89, 2012-Ohio-5692, ¶ 30.  The Supreme Court remanded the matter to this Court for consideration of Ms. Smith's assignments of error that we had previously deemed moot given our conclusion regarding her spectator status.  *Id.* at ¶ 32.  Following supplemental briefing and oral argument, this case is again before us on Ms. Smith's three remaining assignments of error.  For ease of discussion, we address Ms. Smith's assignments of error out of order.

II.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN ITS APPLICATION OF R.C. []2305.321(A)(3)(a) OF THE EQUINE IMMUNITY STATUTE FINDING

THAT APPELLEE WAS "CONTROLLING" HIS HORSE AS A MATTER OF LAW[.]

{¶5} In Ms. Smith's fourth assignment of error, she argues that Mr. Smith was not entitled to summary judgment because he was not an equine activity participant as defined by the statute. We disagree.

{¶6} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8.

{¶7} Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 293, quoting Civ.R. 56(E).

{¶8} R.C. 2305.321(B)(1) establishes immunity for equine activity sponsors and participants from liability in civil or other actions brought by equine activity participants. *See* R.C. 2305.321(B)(1) ("[A]n equine activity sponsor, equine activity participant, equine professional, veterinarian, farrier, or other person is not liable in damages in a tort or other civil

action for harm that an equine activity participant allegedly sustains during an equine activity and that results from an inherent risk of an equine activity."). For the purposes of this case, Mr. Landfair is only immune from suit if he and Ms. Smith are both equine activity participants. The Supreme Court has concluded that Ms. Smith was an equine activity participant. *See Landfair*, 135 Ohio St.3d 89, 2012-Ohio-5692, at ¶ 30. Ms. Smith, however, argues that Mr. Landfair is not immune because he was not an equine activity participant pursuant to R.C. 2305.321(A)(3)(a), which defines an equine activity participant as "a person who engages in * * * [r]iding, training, driving, or controlling in any manner an equine, whether the equine is mounted or unmounted[.]" Ms. Smith argues that Mr. Landfair would only qualify as an equine activity participant if he was "controlling" Annie and that he was not in "control" of Annie when he was lying on the ground, which was when Ms. Smith was injured.

{**¶9**} "Controlling" is not defined by the equine immunity statute. "'[I]n the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.'" *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, ¶ 13, quoting *Wachendorf v. Shaver*, 149 Ohio St. 231 (1948), paragraph five of the syllabus. Control means "[t]o exercise power or influence over * * *[;] [t]o regulate or govern * * *." *Black's Law Dictionary* 353 (8th Ed.2004). It may also mean "to exercise restraining or directing influence over * * *[;] to have power over[.]" *Merriam-Webster's Collegiate Dictionary* 272 (11th Ed.2005). It is undisputed that, even after he fell, Mr. Landfair maintained his hold on Annie's lead line. Therefore, he had some, albeit minimal at that moment, restraining or directing influence over her and, thus, was controlling her.

{¶10} Furthermore, Ms. Smith is essentially arguing for sporadic immunity. Ms. Smith argues that Mr. Landfair had immunity when he was leading Annie from the trailer, lost it when he fell, and regained it when he stood up and calmed Annie. Notably, she cites no authority to support this argument for moment-by-moment analysis of immunity. *See* App.R. 16(A)(7). Her argument also ignores the clear intent of the General Assembly. R.C. 2305.321(B)(1) provides equine activity participants with liability from the inherent risks of equine activity. The inherent risks of an equine activity include "(a) [t]he propensity of an equine to behave in ways that may result in injury, death, or loss to persons on or around the equine[, and] (b) [t]he unpredictability of an equine's reaction to sounds, sudden movement, unfamiliar objects, persons, or other animals." R.C. 2305.321(A)(7). Thus, the statute recognizes that "horses are unpredictable." *Landfair* at ¶ 28. It would appear that, absent the enumerated exceptions to immunity, the General Assembly did not intend for an equine activity participant to suddenly become liable when the horse acted in an unpredictable manner, i.e. when briefly losing control of the horse. Thus, we conclude that Ms. Smith's argument to the contrary is without merit.

{¶11} Accordingly, her fourth assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN HOLDING THAT THE EQUINE IMMUNITY STATUTE EXTINGUISHED THE COMMON LAW RESCUE DOCTRINE[.]

{¶12} In Ms. Smith's first assignment of error, she argues that summary judgment was inappropriate because rescue doctrine supersedes the statutory immunity offered by R.C. 2305.321. We disagree.

{¶13} The rescue doctrine is well-established in Ohio jurisprudence, dating back to the 19th century. *See Pennsylvania Co. v. Langendorf*, 48 Ohio St. 316 (1891), paragraphs one through three of the syllabus. Under the rescue doctrine, "'[o]ne who is injured in an attempt to

rescue a person in danger as a result of that person's own negligence may recover from that person under established principles of negligence including proximate causation.'" *Skiles v. Beckloff*, 9th Dist. Lorain No. 93CA005550, 1993 WL 290203, *1 (Aug. 4, 1993), quoting *Reese v. Minor*, 2 Ohio App.3d 440 (1st Dist.1981), syllabus. *See also Langendorf* at paragraph three of the syllabus (Unless the rescuer unnecessarily exposes himself or herself to danger, "the injury should be attributed to the party that negligently or wrongfully exposed to danger the person who required assistance."). Essentially, the rescue doctrine permits the rescuer to maintain a negligence action despite having voluntarily put himself or herself in harm's way. *See Marks v. Wagner*, 52 Ohio App.2d 320, 323 (3d Dist.1977) ("Technically, the rescue doctrine is limited solely to the issue of the existence of contributory negligence on behalf of the rescuer, including the lack of imputation to the rescuer of the negligence of the person whose rescue is involved, and, in appropriate cases, that recovery is not precluded by the fact that the rescuer is an employee of the defendant. The existence of actionable negligence on the part of the defendant is still determined by common law principles relating to the scope of the defendant's duty, including the element of foreseeability of injury, the violation of that duty and proximate cause.").

{¶14} However, R.C. 2305.321(B)(1) provides that

[e]xcept as provided in division (B)(2) of this section and subject to division (C) of this section, an equine activity sponsor, equine activity participant, equine professional, veterinarian, farrier, or other person is not liable in damages in a tort or other civil action for harm that an equine activity participant allegedly sustains during an equine activity and that results from an inherent risk of an equine activity. Except as provided in division (B)(2) of this section and subject to division (C) of this section, an equine activity participant or the personal representative of an equine activity participant does not have a claim or cause of action upon which a recovery of damages may be based against, and may not recover damages in a tort or other civil action against, an equine activity sponsor, another equine activity participant, an equine professional, a veterinarian, a farrier, or another person for harm that the equine activity participant allegedly

sustained during an equine activity and that resulted from an inherent risk of an equine activity.

Given that Ms. Smith was an equine-activity participant, *see Landfair*, 135 Ohio St.3d 89, 2012-Ohio-5692, at ¶ 30, she "does not have a claim or cause of action upon which a recovery may be based * * * and may not recover damages in a tort or other civil action * * *" against Mr. Landfair subject to the exceptions contained in R.C. 2305.321. R.C. 2305.321(B)(1). Thus, she may not maintain a cause of action under the rescue doctrine because that would be a negligence claim, i.e. a tort, which is barred by R.C. 2305.321(B)(1). *See Marks* at 323.

{¶15} Nevertheless, Ms. Smith argues that the Equine Immunity Statute cannot supersede the common law rescue doctrine because, "[i]n the absence of language clearly showing the intention to supersede the common law, the existing common law is not affected by the statute but continues in full force." However, R.C. 2305.321(B)(1) does clearly abrogate the common law; it prohibits equine activity participants from maintaining claims of negligence and recklessness actions against other equine activity participants. In other words, R.C. 2305.321(B)(1) expressly eliminates the common law causes of action subject to the exceptions in R.C. 2305.321. Thus, if R.C. 2305.321(B)(1) applies, it bars recovery under the rescue doctrine because it eliminates the underlying claims giving rise to the rescue doctrine. *See Marks* at 323.

{¶16} Accordingly, Ms. Smith's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE THE DEFENDANT FAILED TO EXERCISE ANY CARE WHATSOEVER AND REASONABLE MINDS COULD CONCLUDE THAT SUCH CONDUCT WAS WANTON[.]

{¶17} Ms. Smith argues in her second assignment of error that Mr. Landfair's conduct was wanton and, therefore, he was not entitled to immunity under the statute. As noted above, R.C. 2305.321(B)(1) provides general immunity to equine activity participants and sponsors. However, that immunity is subject to exceptions set forth in R.C. 2305.321(B)(2). Pertinent to Ms. Smith's second assignment of error is R.C. 2305.321(B)(2)(d), which provides that the immunity provided by R.C. 2305.321(B)(1) is forfeited if "[a]n act or omission of an equine activity sponsor, equine activity participant, equine professional, veterinarian, farrier, or other person constitutes a willful or wanton disregard for the safety of an equine activity participant and proximately causes the harm involved." "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph three of the syllabus.

{¶18} In support of her motion in opposition to summary judgment, Ms. Smith submitted evidence which focused upon the propriety of Mr. Landfair taking the horse off the property at all as well as Mr. Landfair's conduct at the time of the incident. Ms. Smith submitted the affidavits of her father and Vic Clark. Mr. Smith averred that he had advised against Annie being taken off the property to be shod because she was flighty. He also averred that Mr. Landfair had told him that Annie had only been trailered once before. Mr. Clark also criticized Mr. Landfair's actions in his affidavit, averring that Mr. Landfair should not have attempted to move Annie by himself given his age and that he should have sedated her prior to attempting to remove her from the trailer. In addition to the affidavits of her father and Mr. Clark, Ms. Smith also pointed to Mr. Landfair's deposition in which he indicated that he had a hearing problem

and a person should avoid unloading a horse when there were loud noises around and that he did not look around before unloading Annie.

{¶19} In examining the question before us, we find the trial court's entry problematic because it does not appear that the trial court examined whether the facts set forth by Ms. Smith created a dispute of fact as to whether Mr. Landfair was wanton. Rather, the trial court pointed to evidence put forth by Mr. Landfair that contradicted Ms. Smith's summary judgment evidence and, in doing so, appears to have weighed that evidence in Mr. Landfair's favor.[1] However, the relevant inquiry is whether the facts when viewed in the light most favorable to Ms. Smith create a dispute of material fact as to whether Mr. Landfair's conduct was wanton. In addition, although unclear, the trial court's entry seemed to characterize Ms. Smith as seeking to demonstrate that Mr. Landfair's conduct was wanton. However, Ms. Smith's reciprocal burden on summary judgment was to demonstrate that reasonable minds could differ as to whether Mr. Landfair was wanton. As we have stated many times in the past, we are a reviewing court, and, therefore, under the circumstances, it is appropriate to remand so that the trial court may apply the summary judgment standard and determine whether, when viewed in the light most favorable to Ms. Smith, there was a genuine dispute of fact as to whether Mr. Landfair's behavior was wanton. *See, e.g., Mourton v. Finn*, 9th Dist. Summit No. 26100, 2012-Ohio-3341, ¶ 9.

### III.

{¶20} Ms. Smith's first and fourth assignments of error are overruled, and her second assignment of error is sustained. The judgment of the Summit County Court of Common Pleas

---

[1] The trial court also appears to have erroneously ignored Mr. Clark's affidavit in its entirety because it contained a statement that Mr. Landfair's behavior was wanton. While it is true that an affiant may not make legal conclusions, Mr. Clark also made factual statements regarding Mr. Landfair's actions and the dangers associated with his actions.

is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and case remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JOHN K. RINEHARDT, Attorney at Law, for Appellant.

KENNETH A. CALDERONE and JOHN R. CHLYSTA, Attorneys at Law, for Appellee.