[Cite as *State v. Vaughan*, 2017-Ohio-583.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 16 CAA 0026 |
| ROBERT VAUGHAN | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Criminal appeal from the Delaware County
Court of Common  Pleas, Case No.
15CRI090419

JUDGMENT:       Affirmed

DATE OF JUDGMENT ENTRY:       February 13, 2017

APPEARANCES:

For Plaintiff-Appellee

CAROL OB'BRIEN
Delaware County Prosecutor
140 N. Sandusky Street
Delaware, OH 43015

For Defendant-Appellant

JEFFREY UHRICH
P.O. Box 1977
Westerville, OH 43086

*Gwin, P.J.*

{¶1} Appellant Robert Vaughan ["Vaughan"] appeals his convictions and sentence after a jury trial in the Delaware County Court of Common Pleas on one count of Endangering Children in violation of R.C. 2919.22(B)(1), a felony of the second degree; and one count of Endangering Children in violation of R.C. 2919.22(A), a felony of the third degree.

*Facts and Procedural History*

{¶2} On September 18, 2015, the Delaware County Grand Jury returned an indictment against Vaughan charging him with two counts of endangering children. Count One charged Vaughan with recklessly abusing his infant child. Count Two charged Vaughan with creating a substantial risk to the health or safety of the infant by violating a duty of care. Both charges had an additional finding that the infant suffered serious physical harm.

{¶3} On July 17, 2015, Michelle Leighty, an intake investigator with the Delaware County Department of Job and Family Services ["DCJFS"] received a referral regarding an infant located at the residence of Vaughan and I.B. Specifically, there were allegations that an infant "Jane Doe" daughter of Vaughan, had sustained bruising to the face, and a laceration above her eyebrow, causing concern for her well-being. Leighty went to the residence accompanied by a Delaware City police officer. When they arrived the infant's mother, I.B. and the infant were present. Leighty testified that she observed that the infant had a laceration above her left eyebrow, circular bruising on her face, and a laceration under her nostril.

{¶4} Leighty testified that the infant's mother reported that the infant had been sitting upright on a couch and had fallen onto a baby wipe lid, causing the laceration on the infant's forehead. Ms. Leighty stated that she did not observe any blood on the lid or on the cushion where the child had fallen.

{¶5} As a result of her findings, Leighty asked that the infant be seen and evaluated at Grady Memorial Hospital in Delaware, Ohio. After the evaluation at Grady Memorial Hospital, DCJFS filed for emergency custody of the infant and transported the infant to Nationwide Children's Hospital for further evaluation.

{¶6} X-rays were ordered due to concerns of non-accidental injury. The x-rays revealed that the infant had three broken ribs. Later testing revealed that the infant did not have brittle bone syndrome. Dr. Jennifer Mitzman testified that broken ribs cause significant pain. The doctor further testified that broken ribs are most commonly seen due to some kind of squeezing mechanism. The doctor explained that breaking ribs requires a lot of force, so much so that there are not always broken ribs even when someone has put a lot of pressure on someone's ribs while performing CPR.

{¶7} Officer Greg Bates of the City of Delaware Police Department was the officer that accompanied Ms. Leighty to the residence. Officer Bates testified that he observed a cut above the infant's left eye, bruising on the right cheek, another small cut or scab in the middle of the infant's forehead, and bruising on the infant's left leg.

{¶8} I.B. the infant's mother testified on behalf of the State of Ohio. I.B. admitted that she had been convicted of violating a duty of care by failing to obtain medical treatment for the infant's out of these incidents.

{¶9} I.B. testified that after the infant was born, Vaughan would watch the baby while I.B. was at work, and that she would watch the baby while Vaughan was at work. At the time, Vaughan was working 12-hour shifts most days. However, I.B. admitted that she did not start working and was home to take care of the infant for approximately eight weeks after the baby was born.

{¶10} I.B. testified that the infant sustained an injury when she was about five weeks old. Specifically, the infant sustained a broken leg injury. I.B. stated that she was not present when the injury occurred and that it happened while the baby was under the care of Vaughan. I.B. testified that Mr. Vaughan told her that the infant twisted away from him while he was trying to clean up a scratch the baby had sustained on her face. As a result of the injury, the baby was taken to Grady Memorial Hospital where she was placed in a full body brace and sent home to heal.

{¶11} Regarding the injuries discovered by Ms. Leighty and Officer Bates in July 2015, I.B. testified that I.B., Vaughan and the infant had fallen asleep on the couch. I.B. testified that the infant started crying, awaking I.B. I.B. testified that Vaughan then told her to go to bed and that he would take care of the child. Not long after I.B. went upstairs to go to bed, Vaughan came upstairs to get her because the infant had a cut. I.B. came downstairs. I.B. testified that the infant had a large gash above the infant's left eyebrow. I.B. further testified Mr. Vaughan told her he stepped away from the infant while changing the infant's diaper, and that he did not see what happened. However, he assumed that she had cut her head on the lid to the diaper wipes container. The couple argued about whether to take the infant to the hospital and a decision was made not to take her.

{¶12}  Regarding the bruises to the infant's face, I.B. testified sometime in July 2015 that she came home from work and Vaughan told her he was carrying the infant upstairs while also carrying several other items, including a bottle.  He dropped the bottle and tried to pick it up.  When he leaned down, the infant's head hit on the stairs.  Neither I.B. nor Vaughan sought medical attention for the infant at that time.

{¶13}  I.B. testified that she took the infant to Grady Memorial Hospital on July 17, 2015 at the request of Ms. Leighty.  I.B. did not go to Children's Hospital when the infant was transported to that facility.  While at Children's Hospital, I.B. testified that she learned that the infant had also sustained three or four broken ribs.  I.B. testified that she believed Vaughan caused the broken ribs.  I.B. testified there were times Vaughn would take the infant and bounce her.  I.B. testified that sometimes the infant would not stop crying.  Vaughan would get frustrated and put his thumbs under the infant's ribs and squeeze, causing the infant to scream.  I.B. testified that she did not seek treatment for the infant on these occasions.

{¶14}  I.B. testified that she had a conversation with Vaughan regarding an intentional striking of the infant.  I.B. testified Vaughan had told her that he smacked the child on one occasion because "she wasn't focused."  I.B. testified that she did not notice any sign of injury to the infant at the time she alleged Vaughan made these statements to her.

{¶15}  Detective Tom Donoghue of the Delaware Police Department interviewed Vaughan during this investigation.  Vaughan told the detective that the cut over the infant's eyebrow was caused by the diaper wipes lid.  Vaughan told the detective that the bruises on the infant's face occurred when he accidentally bumped the infant's head on the stairs.

Vaughan told the detective that he might have injured the infant's ribs by tossing her up in the air and missing her and by squeezing too hard.

{¶16} Vaughan testified on his own behalf during the trial. Vaughan testified that he had lied to the police. Vaughan testified that he was not been present when the infant sustained the cut over her eye. Vaughan testified he made up the story about the baby wipes lid. Vaughan testified that when he said that the infant's injuries had occurred while in his care that he had simply been lying to try to protect his family.

{¶17} With respect to the broken leg sustained by the infant in April 2015, Vaughan testified that he was not at home when it happened. Vaughan testified that when he returned home from work, I.B. told him that he needed to look at the infant's leg. When he looked, it was red and swelling. The couple then took the infant to Grady Memorial Hospital. Vaughan testified that he did ask I.B. what happened to the leg, and that I.B. told him that she did not know.

{¶18} Regarding the injury to the infant's forehead in July 2015, Vaughan testified that he first became aware of the injury when he came home from work and saw that there was a gauze wrap on the infant's forehead. Vaughan testified he called his sister who had a medical background to discuss the cut, sent her pictures of the injury, and based on her suggestions decided not to seek medical treatment for the infant.

{¶19} Regarding the bruises to the infant's face, Vaughan testified that he did not know how all the bruises occurred. He stated, "I'm sure some of them did come from me 'cause … I would hold her up and I did, I dropped her a couple of times." 2T. at 251. Vaughan further testified, "[a]nd there's a couple of times where she falls right onto my

breastplate" and that "I probably caused bruising on her forehead and her cheeks." 2T. at 252.

{¶20}  Mr. Vaughan testified that he was not made aware that Charlotte's ribs had been broken until August or September of 2015.  2T. at 258.  When asked about how the ribs may have been broken, Mr. Vaughan denied ever holding Charlotte tight enough to hurt her.  2T. at 259.  Vaughan testified that his strong grip on the infant could have caused the injuries to her ribs.  2T. at 282.  Vaughan testified that it was possible that his thumbs could have gone into the infant's rib cage.  Id.

{¶21}  After deliberating, the jury returned unanimous verdicts of guilty on both counts with the additional findings that the infant suffered serious physical harm. The trial court merged the jury's guilty finding on the R.C. 2912.22(A) charge [violation of duty of care, protection or support] with the jury's guilty finding on the R.C. 2919.22(B)(1) charge [abuse].  Vaughan was sentenced on the R.C. 2919.22(B)(1) [abuse causing serious physical harm] charge, a felony of the second degree.  R.C. 2919.22(E)(2)(d).

{¶22}  On May 16, 2016, the trial court sentenced Vaughan to three years in prison.

*Assignment of Error*

{¶23}  Vaughan raises one assignment of error,

{¶24}  "I. THE CONVICTIONS OF CHILD ENDANGERING AGAINST DEFENDANT ARE NOT SUSTAINED BY THE EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Law and Analysis*

**{¶25}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶26}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶27}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting

testimony.  Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).  However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983).  Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'"  Id.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

> \* \* \*

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶28}  Vaughan argues the state failed to provide evidence that the various injuries sustained by the infant were caused by his actions.  Further, Vaughan contends the medical testimony presented by the state did not establish the time or dates when the

infant's injuries would have been sustained, or that any acts of Vaughan caused any of the specific injuries.  [*Appellant's Brief* at 8-9].

{¶29}  R.C. 2919.22 Endangering Children provides, in relevant part,

(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.  It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

 (1) Abuse the child

* * *

(E)(1) Whoever violates this section is guilty of endangering children.

(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:

* * *

(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree;

(d) If the violation is a violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree.

**{¶30}** In the case at bar, the trial court merged the jury's guilty finding on the R.C. 2912.22(A) charge [violation of duty of care, protection or support] with the jury's guilty finding on the R.C. 2919.22(B)(1) charge [abuse]. The jury further returned a separate finding that the infant suffered serious physical harm. Vaughan was sentenced on the R.C. 2919.22(B)(1) [abuse causing serious physical harm] charge, a felony of the second degree. R.C. 2919.22(E)(2)(d).

**{¶31}** The trial court instructed the jury "[a]buse means any act which causes physical or mental injury that harms or threatens to harm the child's health or welfare." 3T. at 357; R.C. 2151.031(D). The trial court went on to instruct the jury that if the jury found Vaughn guilty of child endangering they must then decide whether the infant suffered "serious physical harm as a result of the abuse." 3T. at 358.

**{¶32}** "Serious physical harm to persons" as defined in R.C. 2901.01(A)(5) means any of the following,

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶33} There is no dispute and the evidence proves beyond a reasonable doubt that the infant suffered a broken leg, broken ribs, and numerous cuts and bruises. Vaughan testified that only he and I.B. cared for the infant; the couple did not have day care, babysitters or anyone else caring for the infant during the time the child received each of the injuries.

{¶34} For the most part, Vaughan blamed I.B. for the infant's injuries. 2T. at 244; 248; 263. However, Vaughan testified that he dropped the infant "a couple of times." 2T. at 251. Vaughan further testified that I.B. told him on more than one occasion that "he held her too tightly…and said you're hurting her…." 2T. at 259. Vaughan admitted that the story about the infant being injured as a result of a fall onto the lid of a baby wipe container was a lie. 2T. at 245-247; 261).

{¶35} Dr. Mitzman testified that the infant suffered three broken ribs. 1T. at 211-212. She further testified that such an injury would require "a significant amount of force, in a specific point." 1T. at 216-217. Dr. Mitzman testified that rib fractures take "a long time to heal and they are painful." 1T. at 213. In some cases, residual pain can be

experienced for years after the broken ribs have healed. 1T. at 215. Dr. Mitzman opined that the injury to the infant's leg was caused by a "twisting and pulling mechanism…." 1T. at 202. The infant would need to be placed in a harness around the waist and down the leg to permit the bones to grow back together. 1T. at 202.

{¶36} I.B. the infant's mother testified that Vaughan was with the infant when her leg was broken. 1T. at 131. Vaughn was also with the infant in June / July 2015, when the infant suffered cuts and bruises. 1T. at 135. Vaughan refused to take the infant to the hospital. I.B. became suspicious of Vaughan and began to take pictures of the infant's injuries. 1T. at 137. I.B. testified that she believed Vaughan caused the broken ribs. I.B. testified there were times Vaughan would take the infant and bounce her. I.B. testified that sometimes the infant would not stop crying. Vaughan would get frustrated and put his thumbs under the infant's ribs and squeeze, causing the infant to scream. 1T. at 140.

{¶37} Although not stated in R.C. 2919.22, recklessness is the culpable mental state for the crime of child endangering. *State v. O'Brien*, 30 Ohio St.3d 122, 508 N.E.2d 144(1987).

{¶38} The Ohio Supreme Court has defined reckless conduct as,

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson,* 53 Ohio St.3d at 104–105, 559 N.E.2d 705, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); see also Black's Law Dictionary 1298–1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of

harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm).

*Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶34.

**{¶39}** If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.* , 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶40}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Vaughan recklessly abused the infant causing serious physical harm to the infant.

**{¶41}** We hold, therefore, that the state met its burden of production regarding child endangering by abuse causing serious physical harm to the infant, and, accordingly, there was sufficient evidence to support Vaughan's convictions.

**{¶42}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

**{¶43}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact

finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶44} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶45} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State*

*v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).   Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.   *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668  (1997).*

**{¶46}**  In the case at bar, the jury heard the witnesses, viewed the evidence and heard Vaughan's testimony and explanations of the infant's injuries.

**{¶47}**  We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.  The jury neither lost his way nor created a miscarriage of justice in convicting Vaughan of the charges.

**{¶48}**  Based upon the foregoing and the entire record in this matter, we find Vaughan's convictions are not against the sufficiency or the manifest weight of the evidence.  To the contrary, the jury appears to have fairly and impartially decided the matters before them.  The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Vaughan and his arguments.  This court will not disturb the jury's finding so long as competent evidence was present to support it.  *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978).  The jury heard the witnesses, evaluated the evidence, and was convinced of Vaughan's guilt.

**{¶49}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Vaughan was convicted.

**{¶50}** Vaughan's sole assignment of error is overruled.

**{¶51}** The judgment of the Delaware County Court of Common Pleas, Delaware County, Ohio is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur