[Cite as *Posan v. Boyer*, 2025-Ohio-529.]

STATE OF OHIO      )
               )ss:
COUNTY OF SUMMIT   )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

AMANDA POSAN

    Appellant

    v.

WILLIAM JAMES BOYER, et al.

    Appellees

C.A. No.     31116

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2020 08 2240

DECISION AND JOURNAL ENTRY

Dated: February 19, 2025

CARR, Judge.

{¶1} Plaintiff-Appellant Amanda Posan, in her individual capacity and as next friend of her son A.B.V., appeals an order of the Summit County Court of Common Pleas that granted summary judgment to Defendants-Appellees William Boyer and the Barberton Local Schools Board of Education ("the Board"). This Court reverses.

{¶2} We summarized the history of this case in the previous appeal:

Ms. Posan filed a complaint against Mr. Boyer and the Board alleging that A.B.V. sustained injuries while using a radial arm saw during a woodworking class at Barberton High School. She alleged that A.B.V.'s injuries occurred as the result of a lack of supervision on the part of Mr. Boyer that, combined with the condition of the saw, "created an unreasonably dangerous and defective situation" that resulted in his injuries. Mr. Boyer and the Board moved for summary judgment, arguing that Mr. Boyer's conduct was neither negligent nor reckless and that, in any event, they were entitled to the immunity provided by Revised Code Section 2744.02.

*Posan v. Boyer*, 2023-Ohio-2471, ¶ 2-3 (9th Dist.).

{¶3} The trial court granted summary judgment to Mr. Boyer and the Board, and Ms. Posan appealed. *Id.* at ¶ 3. This Court determined that the trial court applied the wrong definition

of recklessness. *Id.* at ¶ 4. The matter was reversed and remanded for the trial court to apply the definition of recklessness found in *Anderson v. Massillon*, 2012-Ohio-5711, paragraph four of the syllabus.

{¶4} Upon remand, the trial court again concluded that Mr. Boyer and the Board were entitled to summary judgment on the basis of immunity. Ms. Posan has appealed, raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN GRANTING DEFENDANT WILLIAM BOYER'S MOTION FOR SUMMARY JUDGMENT CONCLUDING (1) THAT THERE WERE NO GENUINE ISSUES OF MATERIAL FACT WHETHER DEFENDANT BOYER WAS RECKLESS IN ASSIGNING PLAINTIFF [A.B.V] TO WORK ON AN IMPROPERLY GUARDED RADIAL ARM SAW WITHOUT DIRECT ADULT SUPERVISION; (2) BY FAILING/REFUSING TO CONSIDER PLAINTIFF'S EXPERT'S OPINIONS OFFERED IN OPPOSITION TO MR. BOYER'S MOTION FOR SUMMARY JUDGMENT; (3) BY FAILING/REFUSING TO CONSIDER THE RELEVANCE OF THE APPLICABLE OSHA STANDARD AS PERMITTED BY THE OHIO SUPREME COURT IN PARAGRAPH 5 OF THE SYLLABUS IN *ANDERSON V. CITY OF MASSILLON*, 134 OHIO ST.3D 380 (2012); (4) BY IGNORING TESTIMONY BY MR. BOYER THAT IT WAS HIS PERSONAL POLICY NOT TO LEAVE THE STUDENTS WORKING ON POWER SAWS WHEN HE WAS NOT IN THE SHOP; AND (5) BY *WEIGHING* EVIDENCE OF "RECKLESSNESS" CONTRARY TO THE REQUIREMENTS OF CIV.R. 56(C). (Emphasis sic.)

{¶5} In her first assignment of error, Ms. Posan challenges the trial court's grant of summary judgment to Mr. Boyer.

{¶6} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any

doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist. 1983).

{¶7} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Id.* at 293. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶9} "The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 9, quoting *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). R.C. 2744.02(A)(1) provides, in relevant part, that unless an exception applies, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an

employee of the political subdivision in connection with a governmental or proprietary function." "When it has been determined that a party generally qualifies for immunity due to its status as a political subdivision, the second tier of the analysis is to determine whether one of the exceptions to immunity set forth in R.C. 2744.02(B) is applicable." *Thomas v. Lorain Metro. Hous. Auth.*, 2018-Ohio-2997, ¶ 13 (9th Dist.). "Under circumstances where an exception to immunity applies, the third tier of the analysis involves a determination of whether immunity may be restored under R.C. 2744.03(A)." *Id.*

{¶10} "With respect to employees, however, courts must look directly to [R.C.] 2744.03(A)(6) to determine whether immunity applies." *Posan* at ¶ 6. Relevant to the instant appeal, an employee is immune from liability unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" R.C. 2744.03(A)(6). The question before this Court on appeal is whether a genuine issue of material fact existed with respect to whether Mr. Boyer's conduct was reckless. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson*, 2012-Ohio-5711, at paragraph four of the syllabus.

{¶11} First, this Court expresses concern about language used in the trial court's judgment entry. The trial court utilized language that indicates that the trial court may have weighed the evidence instead of viewing the evidence in a light most favorable to the nonmoving party. For example, the trial court indicated that it was "not convinced" by the evidence and stated on several occasions that it found certain things. The role of the trial court in summary judgment proceedings is not to act as a trier of fact. Nonetheless, this Court will proceed to analyze the merits of Ms. Posan's arguments.

{¶12} On December 18, 2018, shortly before the holiday break, A.B.V. was 15 years old and a sophomore at Barberton High School. He was enrolled in a woodworking class taught by Mr. Boyer at the high school. This was A.B.V.'s first woodworking class. Prior to that day, A.B.V. had spent somewhere around 10 to 15 minutes using the radial arm saw under the supervision of Mr. Boyer and in his immediate presence. A.B.V. estimated that he used the radial arm saw once or twice prior to the accident. A.B.V. was described as a responsible student who did not engage in behavior that would suggest he might act in an unsafe manner around the saw.

{¶13} However, multiple students testified that the class was a large class. A.B.V. indicated that Mr. Boyer said that it was one of the biggest woodworking classes he had ever had; A.B.V. estimated that there were 28 students in the class, although Mr. Boyer disputed that number. Nonetheless, Mr. Boyer did acknowledge that it was one of his larger classes. M.J. stated that the class was too big.

{¶14} Also, more than one student testified about the lack of consequences for any misbehavior during class. A.B.V. asserted that no one had ever received any consequences for their actions in class and no one ever got in trouble. A.S. stated that "everybody took advantage of [Mr. Boyer] because it was just like a free period almost." A.S. indicated that "everybody . . . did whatever they want[ed] in the class[.]" M.J. described the class as being "kind of rowdy." M.J. indicated that "[t]here was a lot of obnoxious kids in that class[.]" M.J. stated that both A.S. and T.J. were obnoxious.

{¶15} Mr. Boyer began teaching at Barberton High School during the 2000-2001 school year. Prior to his retirement in 2021, he taught woodworking for approximately 19 years.

{¶16} The class was taught in an area involving three rooms, which included a typical classroom, an area referred to as the toolroom, and the wood shop. The toolroom was a room that

connected the classroom to the wood shop. The wood shop contained the radial arm saw at issue and other equipment. Typically, some of the students would be in the classroom and some in the wood shop. The students could move freely between the rooms. A surveillance camera faced the exit of the wood shop. The angle of the camera also captured the radial arm saw. Thus, the accident and surrounding events were captured on video. However, the toolroom and classroom are not visible on the footage, and only a small portion of the wood shop is seen.

{¶17} The radial arm saw at issue was manufactured in the late 1950's and had a guard on the upper part of the blade but not the lower part of the blade. At the time of manufacture there was no lower blade guard mentioned in the manual. However, at the time of the accident, a lower blade guard was available for the saw, although Mr. Boyer did not know about the existence of a lower guard. At least one student testified to seeing a radial arm saw with a lower guard on the internet after the accident. While OSHA regulations are not applicable to school environments, certain OSHA publications do address radial arm saws and detail the importance of a lower guard. The saw was used in the class to make crosscuts, i.e. the saw blade would be perpendicular to the length of the piece of wood to be cut and would cut a piece of wood into two shorter pieces of wood.

{¶18} The wood shop also had a SawStop table saw that automatically stops the blade if it touches a finger or encounters moisture. If the safety mechanism is triggered, it costs $100 to replace the cartridge. There was testimony that the students were not permitted to use this saw absent direct supervision due to the cost to replace the cartridges.

{¶19} There is evidence in the record that supports that Mr. Boyer provided the students with written materials about the use of the radial arm saw and the students had to pass a written examination prior to using the radial arm saw. A.B.V. and his mother also signed a safety

agreement pertaining to the class. Mr. Boyer demonstrated the safe use of the radial arm saw and A.B.V. had previously safely operated the radial arm saw under supervision. The video also evidences that Mr. Boyer demonstrated using the radial arm saw the day of the accident prior to the accident and A.B.V. safely utilized the radial arm saw that day prior to the accident.

{¶20} In his December 2021 affidavit, Mr. Boyer indicated that the standard of care did not require a teacher to keep "eyes on" a student while the student operates a machine. A reasonable teacher could allow a student to use the saw at issue without constant monitoring if:

> (a) the student has received instruction on the safe and correct operating procedure of the machine, (b) the student has successfully passed a written test on the safe and correct operating procedure of the machine, (c) the safe and proper operating procedure has been demonstrated for the student, (d) the student has successfully operated the machine and proven his knowledge of the safe and proper operating procedures, and (e) the student is a responsible individual who is not known to engage in horseplay or games near power machinery.

{¶21} If those criteria are met, Mr. Boyer averred that only "periodic observation" is necessary. Thus, under those circumstances, it would be reasonable for a teacher to allow a student to operate the saw at issue "while the shop teacher diverts his/her attention elsewhere or steps out of the classroom momentarily." The other industrial arts teacher at Barberton High School made similar attestations in his affidavit. Nonetheless, at his deposition given prior to his affidavit, Mr. Boyer testified that he has a policy that "kids shouldn't use the machines if I'm not in the room." When asked to repeat what he said, Mr. Boyer stated that, "[o]ne of [his] safety procedures is [that] students shouldn't use the machines if I'm not present in the wood shop."

{¶22} On the day at issue, towards the end of class, Mr. Boyer asked A.B.V. and two other students, A.S. and T.J., to use the radial arm saw to cut up scrap wood. According to the other woodworking teacher, while it would have been possible to use the SawStop table saw to cut the

scrap wood, it would have been a far more time-consuming process as the SawStop table saw was designed to do rip cuts not crosscuts.

{¶23} In the minutes before the accident, the surveillance video depicts students milling about the wood shop. Mr. Boyer demonstrates the use of the radial arm saw and A.B.V. and other students use it appropriately. For several minutes, Mr. Boyer appears in and out of the frame of view. While Mr. Boyer is not in view, a couple of students are seen hitting other students on the butt with a piece of wood, briefly dueling with the wood, banging pieces of wood together, and banging the pieces on a large barrel. Mr. Boyer appears in the video shortly after, but no discipline appears to take place. A couple of minutes after Mr. Boyer disappears from view, in the seconds prior to the accident, the video footage depicts A.S. and T.J. dueling with pieces of wood in front of the radial arm saw. M.J. asserted that the floor around the radial arm saw was a "safety box[.]" According to M.J., Mr. Boyer informed the class that only the person operating the radial arm saw should be inside the safety box. M.J. maintained that the children that were "messing around" were inside the corner of the safety box. A.B.V. testified that, at the time of the accident, he was cleaning out sawdust from near the radial arm saw. A.B.V. agreed that he was not following proper safety procedures at the time of the accident. A.B.V. testified that he was unaware that the saw blade kept running while it was in the retracted position and was not being used. A.B.V. described his actions as a "spur-of-the-moment thing."

{¶24} A.B.V. testified in his deposition that immediately after the accident, Mr. Boyer was in the doorway of the tool room. A.S. asserted that Mr. Boyer would not have been able to see the children by the radial arm saw from the toolroom. M.J. asserted that M.J. thought Mr. Boyer was in the classroom at the time. M.J. said that it was not uncommon for Mr. Boyer to leave the wood shop even with machines running. Mr. Boyer maintained that at the time of the accident

he was in the toolroom doorway. He indicated that, depending on where he was standing at the time and who was around him would determine whether he could see the radial arm saw from where he was. At the time, Mr. Boyer was checking off students for completing their end of class job duties.

{¶25} Four of the fingers on A.B.V.'s dominant left hand were amputated by the radial arm saw. After an extensive and lengthy surgery, the surgeon was able to reattach them; however, one of the fingers had to later be surgically removed. The reattached fingers have no dexterity and were reattached for aesthetic reasons.

{¶26} Mr. Boyer was not aware of any of the children engaging in horse play around the radial arm saw or otherwise on the day of the accident. If he had been, he would have put a stop to it. Mr. Boyer was unfamiliar with OSHA guidelines with respect to radial arm saws, did not look up the standards, and believed the radial arm saw in the class was safe when used properly. Mr. Boyer testified that he had never had a student suffer an injury as serious as A.B.V.'s injury. Mr. Boyer indicated that there were other injuries on other equipment that involved cuts to the skin and one that necessitated stitches. Mr. Boyer maintained that no one in his class had ever had an injury from the radial arm saw prior to A.B.V.'s injury.

{¶27} After considering the totality of the evidence and viewing it in a light most favorable to the nonmoving party, we conclude that the trial court erred in concluding that there was not a genuine issue of material fact with respect to whether Mr. Boyer's conduct was reckless. Even if we were to conclude that Mr. Boyer met his initial burden of proof, there is nonetheless evidence, which if believed, a trier of fact could consider reckless. While there was no testimony that A.B.V. was irresponsible, there was testimony that A.S. and T.J. were considered "obnoxious" by at least one student and Mr. Boyer also asked them to use the radial arm saw to cut wood. They

were also some of the students who engaged in horseplay near the radial arm saw while it was running seconds before A.B.V.'s accident. Further, the class was described as being very large and "kind of rowdy." There was also testimony that children did what they wanted in Mr. Boyer's classroom and that he regularly left the wood shop while machines were in use. There was evidence that, at the time of the accident, Mr. Boyer was not in the wood shop and may not have even been in the adjacent toolroom. Further, there was testimony that Mr. Boyer could not see what was happening at the radial arm saw. In addition, the record is clear that the radial arm saw did not have a lower guard, one was available for that machine and, irrespective of whether OSHA guidelines are applicable to schools, OSHA publications advise the use of a lower guard on a radial arm saw. Moreover, the wood shop contained another safer saw that could have performed the same function as the saw that caused A.B.V.'s injury. Irrespective of whether Mr. Boyer was aware that a lower guard was available for the radial arm saw, considering the totality of the evidence in a light most favorable to the nonmoving party, a genuine issue of material facts exists with respect to whether Mr. Boyer displayed a "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson*, 2012-Ohio-5711, at paragraph four of the syllabus.

{¶28} We note that Mr. Boyer's own testimony when considered with the other evidence could lead one to conclude that Mr. Boyer failed to meet the standard of care set forth in his affidavit. Arguably, Mr. Boyer's absence from the wood shop was not momentary and he violated his own policy by not being in the room while the machines were in use. There is also evidence to suggest that at least two of the students who were assigned to use the radial arm saw were considered "obnoxious" by at least one other student and also engaged in horseplay around the radial arm saw.

{¶29} While each individual fact may be insufficient to demonstrate a genuine issue of material fact, taken together, we conclude that a genuine issue of material fact remains with respect to whether Mr. Boyer's conduct or omissions were reckless. Thus, we believe the cases referenced by Mr. Boyer are factually distinguishable.

{¶30} Ms. Posan's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN GRANTING SUMMARY JUDGMENT TO DEFENDANT BARBERTON HIGH SCHOOL AND TO DEFENDANT BARBERTON SCHOOL BOARD WHEN PLAINTIFF PLED AND ESTABLISHED GENUINE ISSUES OF MATERIAL FACT REGARDING THE EXCEPTION TO THE GOVERNMENTAL IMMUNITY SET FORTH IN R.C. 2744.02(B)(4), COMMONLY REFERRED TO AS THE PHYSICAL DEFECTS RULE, AND BY FAILING TO ACKNOWLEDGE THAT AN INADEQUATELY GUARDED RADIAL ARM SAW COULD CONSTITUTE A PHYSICAL DEFECT WITHIN THE MEANING OF R.C. 2744.02(B)(4) AND THAT A JURY COULD FIND FROM THE EVIDENCE THAT DEFENDANT BOYER WAS, AT THE VERY LEAST, NEGLIGENT IN FAILING TO PROPERLY SUPERVISE PLAINTIFF'S THEN MINOR SON ON THAT SAME RADIAL ARM SAW[.]

{¶31} Ms. Posan asserts in her second assignment of error that the trial court erred in granting summary judgment to the Board.

{¶32} The exception to immunity at issue here is contained in R.C. 2744.02(B). R.C. 2744.02(B)(4) provides:

Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

. . .

Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not

limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

{¶33} In *Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 27, a plurality of the Ohio Supreme Court stated that:

R.C. 2744.02(B)(4) requires that two separate elements be met—the injuries at issue must be caused both (1) by a political subdivision's employee's negligence and (2) by a physical defect "within or on the grounds of, buildings that are used in connection with the performance of a governmental function." On review of the cases addressing the issue, we agree with the courts that have held that the lack of safety equipment or other safety features could amount to a physical defect.

{¶34} The Supreme Court went on to hold that "that the absence of a fire extinguisher or other safety equipment within a science classroom could be a physical defect such that an exception to immunity could exist under R.C. 2744.02(B)(4)." *Id.* Further, because the plaintiffs alleged that "their injuries were caused by the negligent supervision of the science teacher and the lack of a fire extinguisher and other safety equipment in the classroom[,]" the Supreme Court concluded that the lower court did not err in denying the motion to dismiss. *Id.* at ¶ 28.

{¶35} Here, this Court has already determined that Ms. Posan demonstrated the trial court erred in concluding there was no genuine issue of material fact with respect to whether Mr. Boyer was reckless. Moreover, in light of the plurality decision in *Greenville City Schools*, there also remains a genuine dispute of material fact with respect to whether the absence of a lower guard on the radial arm saw represents a physical defect rendering the exception in R.C. 2744.02(B)(4) applicable.

{¶36} We sustain Ms. Posan's assignment of error and remand the matter to the trial court for it to consider in the first instance whether immunity may be restored under R.C. 2744.03(A).

{¶37} Ms. Posan's second assignment of error is sustained to the extent discussed above.

III.

**{¶38}** Ms. Posan's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the matter is remanded to the trial court for it to consider whether immunity is restored to the Board under R.C. 2744.03(A) and for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

ORVILLE L. REED, III, and DAVID W. HILKERT, Attorneys at Law, for Appellant.

KENNETH A. CALDERONE and JAMES M. LYONS, JR., Attorneys at Law, for Appellee.

MARSHAL A. PITCHFORD, Attorney at Law, for Defendant.

ANTHONY G. GALASSO, Attorney at Law, for Defendant.